MOORMAN, Judge:
The appellant, Larry G. Tyrues, through counsel, seeks review of an April 7, 2004, Board of Veterans’ Appeals (Board) decision that denied disability compensation for a lung disorder as a chronic disability because the evidence did not support a finding that it resulted from an undiagnosed illness and therefore did not warrant service connection on a presumptive basis under 38 U.S.C. § 1117. Both parties filed briefs, and the appellant filed a reply brief. On November 15, 2005, the Court affirmed the Board’s decision and held that it did not have jurisdiction to review a September 1998 Board decision that denied the appellant disability compensation on a direct basis. Tyrues v. Nicholson, 20 Vet.App. 231 (table), 2005 WL 3157695 (2005). On March 11, 2008, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) vacated this Court’s decision and remanded the matter for the Court to reconsider its decision in light of two decisions reached after the Court issued its November 2005 decision in this case: Joyce v. Nicholson, 443 F.3d 845 (Fed.Cir.2006), and Roebuck v. Nicholson, 20 Vet.App. 307 (2006). Tyrues v. Peake, 273 Fed.Appx. 921 (Fed.Cir.2008). A pan el of the Court heard oral argument on September 9, 2008. Thereafter, this case was called before the full Court. This appeal is *168 timely, and the Court has jurisdiction pursuant to 88 U.S.C. §§ 7252(a) and 7266(a).
For the reasons set forth below, the Court holds that the Secretary permissibly processed and issued a final decision denying benefits based on direct service connection, and remanded for the consideration of benefits based upon presumptive service connection, in separate decisions, in 1998 and 2004. We further hold that because benefits based on direct service connection were finally decided in a 1998 Board decision that was not timely appealed, nor reopened and considered in the 2004 Board decision, we lack jurisdiction to now review the denial of benefits for service connection on a direct basis. As discussed more fully below, the Court will dismiss, for lack of jurisdiction, that part of the appeal finally decided in the September 1998 Board decision, and we will vacate the 2004 decision of the Board now on appeal and remand the matters addressed therein for further adjudication consistent with this opinion.
I. FACTS
Mr. Tyrues served on active duty in the U.S. Army from September 1969 to April 1971, and from September 1990 to May 1991. Record (R.) at 16-17. He served in the Persian Gulf from November 1990 to April 1991. R. at 17. In March 1994, Mr. Tyrues was hospitalized for treatment of refractory pneumonia and tonsilitis. R. at 227. In March 1995, he sought VA benefits for a lung disability on the basis of direct service connection. R. at 112. In December 1996, following a VA hearing officer’s suggestion that his lung symptoms and various other complaints, including sore and aching joints, may warrant a claim for “Persian Gulf Syndrome,” Mr. Tyrues sought service connection on that basis as well. R. at 146-47,150.
In a March 1997 decision, the Board remanded the matter of Mr. Tyrues’s entitlement to service connection for a lung disorder for further development, including the procurement of medical records and a VA medical examination to obtain a current diagnosis of his claimed respiratory disability and to assist in a determination as to whether any current lung disorder was related to his periods of active service. R. at 155. The Board directed that following development, the VA regional office (RO), if it issued an adverse decision, should provide Mr. Tyrues with a Supplemental Statement of the Case (SSOC) and return the case to the Board. R. at 156. The following month, the RO notified Mr. Tyrues that it had received his claim for benefits based on his Persian Gulf War service and requested further evidence. R. at 163-65. An April 1997 RO Compensation and Pension Examination Worksheet noted that the Board had remanded an appeal from Mr. Tyrues and directed compliance with the Board remand as to Mr. Tyrues’s claim for service connection “for a lung disorder due to Persian Gulf War service.” R. at 168. The RO also noted that Mr. Tyrues “has amended his claim to include s/c [(service connection)] for aching joint, memory loss, [and] a stomach condition.” R. at 168.
A May 1997 VA medical examination report identified the then-present complaints of Mr. Tyrues to be lung disorder, joint pain, and memory loss. R. at 190. The VA examiner diagnosed Mr. Tyrues as having “1. Possible Persian Gulf Syndrome with shortness of breath, joint pain, and memory loss. 2. Degenerative arthritis feet with bilateral Hallux valgus deformity.” R. at 191. The examiner opined that “[i]t is only speculation on my part, but, he did not have a lung disorder prior to his service in the Persian Gulf as he does now.” Id.
*169 On April 20, 1998, the RO issued a decision denying service connection for a lung disorder, which the RO noted was a “remanded issue.” R. at 242. In its discussion of the lung disorder, the RO specifically stated that “service connection for a lung disorder on a direct basis remains denied” and that, in addition, “service connection for lung problems, diagnosed on VA examination as shortness of breath, as due to an undiagnosed illness is denied.” R. at 243. The RO also denied service connection for three other separately identified conditions — -joint pain as due to an undiagnosed illness, memory loss as due to an undiagnosed illness, and a stomach condition as due to an undiagnosed condition. The RO concluded that (1) the'joint pain was determined to result from known clinical diagnoses of degenerative arthritis of the feet, tendonitis of the right shoulder, and lumbar strain; (2) the memory loss was not shown with chronic symptoms of a certain duration within the requisite period; and (3) the stomach condition was determined to result from a known clinical diagnosis of irritable bowel syndrome. R. at 243-45. The record on appeal does not contain any subsequent document from Mr. Tyrues to the RO, or from the RO to Mr. Tyrues, as to these three conditions. See R. at 1-402.
On April 20, 1998, the RO notified Mr. Tyrues that it was returning to the Board the matter of service connection for a lung disorder and enclosed an SSOC that discussed “service connection for a lung disorder.” R. at 248-54. The SSOC reiterated the findings contained in the rating decision of the same date — denying benefits for a lung disorder on a direct basis and for lung problems, diagnosed as shortness of breath, as due to an undiagnosed illness. R. at 254. Mr. Tyrues responded to the SSOC stating that the issue in this case is entitlement to service connection for a lung disorder. R. at 256.
In September 1998, the Board (1) denied disability compensation based on direct service connection for a lung disorder because it found that the matter was not well grounded, and (2) remanded to the RO the issue of disability compensation based on presumptive service connection for an undiagnosed illness manifested by shortness of breath for further development to include an additional VA medical examination. R. at 265-76. The Board discussed the evidence of record as it pertained to symptoms of the lung and chest, including congestion, colds, and flu-like symptoms, and discussed evidence regarding pulmonary function tests, breath sounds, any pulmonary or pleural abnormalities, as well as diagnoses of pneumonia. R. at 269-70. The Board did not refer to any symptoms other than those involving the chest and lungs. The Board did not make any reference to the joint pain, stomach condition, and memory loss. See R. at 265-75. The Board instructed that, in regard to the remanded matter, the VA medical examiner should render an opinion as to whether, for each symptom alleged by Mr. Tyrues, the symptom is attributable to a “known” clinical diagnosis, in light of the medical history and examination findings, and, if so, the examiner should identify the diagnosed disorder and render an opinion as to its etiology and date of onset. R. at 274. At the time it rendered the 1998 decision, the Board furnished Mr. Tyrues a notice concerning his appellate rights, which included notification that he could appeal the decision with regard to matters that had not been remanded. R. at 275-76. Mr. Tyrues did not file a Notice of Appeal (NOA) of this Board decision.
In December 1998, Mr. Tyrues underwent a second VA examination. R. at 285-87. The examiner reviewed Mr. Tyrues’s claims file and opined that “[t]he history obtained from the veteran, the claim folder *170 review, and the examination findings indicate that the veteran probably has chronic bronchitis, which gets worse when he gets exposed to dust, paint, etc.” R. at 287.
In February 2000, the Board denied Mr. Tyrues’s claim for disability compensation for “shortness of breath as a chronic disability resulting from an undiagnosed illness” because it found the evidence of record did not establish presumptive service connection. R. at 313. In December 2000, the Court vacated the February 2000 Board decision and remanded the matter to the Board pursuant to the parties’ joint motion for remand. See R. at 339. The Court ordered that VA provide Mr. Tyrues a respiratory examination and that it accomplish any notification and development required under the Veterans Claims Assistance Act of 2000 (VCAA), Pub.L. No. 106-475, 114 Stat.2096. R. at 340-41. In December 2001, Mr. Tyrues underwent a VA medical examination during which the examiner, Dr. Plump, diagnosed Mr. Tyrues as having “mild chronic bronchitis” with a history of refractory pneumonia and stated his “medical opinion that the patient’s shortness of breath due to an undiagnosed illness is at least as likely as not due to the Gulf War service.” R. at 350.
In July 2002, the Board’s Case Development Unit (CDU) found that because Dr. Plump had attributed Mr. Tyrues’s symptoms to both chronic bronchitis and to an undiagnosed illness, the results of the December 2001 VA examination were inconsistent, and additional development was needed. R. at 365-66. It ordered a further examination, by another examiner. It directed that the new examiner must (1) identify the diagnosed disorder to which he attributed any of Mr. Tyrues’s symptoms; (2) explain his diagnosis; and (3) render an opinion as to the etiological basis and date of onset of such diagnosed disorder. R. at 371-72. Or, if the examiner was “unable to attribute the identified symptoms to a diagnosable disorder, he should so indicate” and also indicate “whether or not this could be related to Gulf War service.” R. at 372. In October 2002, Mr. Tyrues underwent an additional VA medical examination, by a different VA examiner (not Dr. Plump), after which the examiner stated that Mr. Tyrues “does not have any respiratory problems, symptoms[,] or signs at this time_In my opinion he is allergic to certain paints and vapo[r] and these occasional respiratory symptoms are not related to the exposure of fumes in Gulf War.” R. at 370. In April 2004, the Board issued the decision on appeal here. R. at 1-12.
II. ANALYSIS
A. Scope of the Appeal

1. Position of the Parties

The appellant argues that the Court has jurisdiction to review the September 1998 Board decision that both denied service connection for a lung disorder on a direct basis and remanded the issue of presumptive service connection for an undiagnosed illness manifested by shortness of breath. The appellant asserts that the 1998 Board decision “concerns the same claim” decided by the April 2004 Board decision here on appeal. Appellant’s Brief (App.Br.) at 5. He contends that because both decisions address the same claim, i.e., service connection for a lung disorder, he has not lost his right to appeal the September 1998 Board decision denying direct service connection because, under Harris v. Derwinski, 1 Vet.App. 180 (1991), it would have been premature to file an appeal from that decision prior to the Board’s finally deciding the matter of his entitlement to service connection on a presumptive basis in the April 2004 Board decision. App. Br. at 5; Harris, 1 Vet.App. at 183 (holding that a *171 Board decision that both denied one claim and remanded a second claim was not final because the denied claim was inextricably intertwined with the remanded claim).
During oral argument, the appellant maintained that he was seeking compensation for one disability, that is, a disability resulting from a lung problem (or a disability related to his lung), and that there are two separate theories of entitlement to VA compensation for his lung disorder: presumptive service connection under section 1117 and direct service connection. In support of his argument, the appellant argued that under Roebuck, supra, the finality of the September 1998 Board decision, which he contends incorrectly split the appellant’s claim for service connection based on two theories of etiology, was “held in suspense” until the Board issued the April 2004 decision, and thus, the Court has jurisdiction to review the September 1998 Board decision.
The Secretary, on the other hand, argues that there are two separate claims involved here — a claim for entitlement to service connection for a diagnosed disability, i.e., a diagnosed lung condition, under the provisions of 38 U.S.C. § 1110[1] and a claim for entitlement to service connection for an undiagnosed disability under the provisions of 38 U.S.C. § 1117.[2] Secretary’s Br. at 18-20. He asserts that the claims involve two separate legal and factual bases for entitlement to service connection. Id. He contends that the Court lacks jurisdiction to review the 1998 Board decision because the NOA was filed with the Court 5% years after the September 1998 Board decision, long past the 120-day *172 filing deadline for an appeal to this Court and the record reflects no motion for reconsideration was timely filed with the Board to toll the statutory deadline. Id. at 16-17.
As discussed below, the Court need not decide whether the appellant had two separate claims — one for direct service connection for a lung disability and one for presumptive service connection for a chronic disability resulting from an undiagnosed illness — or a single claim for disability compensation based on two separate theories that might support service connection and the award of benefits. This is because, in either case, the 1998 Board decision was a final decision, and the appellant failed to file an NOA with the Court within 120 days after notice of the mailing of that decision, as required under 38 U.S.C. § 7266(a) to invoke our jurisdiction.

2. General Law

This Court’s jurisdiction is governed by 38 U.S.C. §§ 7252(a) and 7266(a). Section 7252 provides that this Court “shall have exclusive jurisdiction to review decisions of the [Board].” 38 U.S.C. § 7252(a). Section 7266(a) provides that to obtain review by this Court “of a final decision of the Board of Veterans’ Appeal,” a person “adversely affected by such decision” must file an NOA “with the Court within 120 days after the date on which the notice of the decision is mailed pursuant to section 7104(e) of this title.” 38 U.S.C. § 7266(a). Accordingly, this Court has appellate jurisdiction to review final Board decisions. See Breeden v. Principi, 17 Vet.App. 475, 478 (2004).
The Federal Circuit in Maggitt v. West discussed our jurisdictional statute. The Federal Circuit held that our Court erred when it held that it did not have jurisdiction to hear arguments raised for the first time before our Court. In reaching that decision, the Federal Circuit said that “[t]he government is correct in the assertion that the jurisdiction of the Veterans Court by statute only reaches to a ‘decision of the Board.’ ” 202 F.3d 1370, 1375 (Fed.Cir.2000) (quoting 38 U.S.C. § 7252(a)). The Federal Circuit then said: “A ‘decision’ of the Board, for purposes of our Court’s jurisdiction under section 7252, is the decision with respect to the benefit sought by the veteran: those benefits are either granted ..., or they are denied.” Id. at 1376. In Kirkpatrick v. Nicholson, the Federal Circuit subsequently noted that this definition of “decision” in section 7252 was “in line with the definition of a Board decision in 38 U.S.C. § 7104, the Board’s jurisdictional statute,” which provides that “ ‘[e]ach decision of the Board shall include ... an order granting appropriate relief or denying relief.’ ” 417 F.3d 1361, 1364 (Fed.Cir.2005) (quoting 38 U.S.C. § 7104(d)).
The Board’s 1998 decision in this case contained an order denying relief. See Maggitt, supra. It specifically denied benefits — entitlement to service connection for a lung disorder on a direct service-connected basis. Pursuant to its remand directives, however, the Board decision also left open the possibility that the appellant may be entitled to benefits for a chronic disorder manifested by shortness of breath, due to an undiagnosed illness, on a presumptive basis. Therefore, the Court must decide whether the remand of entitlement to service connection for a chronic disorder manifested by shortness of breath rendered nonfinal the Board’s decision to deny benefits for a lung condition based on direct service connection. In other words, the question is whether the 1998 Board decision that adversely resolved direct service connection for a lung condition and also remanded to the RO another matter was “final” with regard to the resolved *173 matter for purposes of judicial appeal to this Court such that the appellant was required to appeal that decision within 120 days after it issued.
3. Roebuck and Joyce
In resolving the question, the Federal Circuit’s remand of the instant case suggested that we specifically consider two recent decisions. We first consider this Court’s decision in Roebuck, supra, where the Court addressed the finality of a Board decision. The Court notes that Roebuck, by its terms, involved a “unique” set of circumstances where the Board issued a decision in two separate parts, explicitly stating its intent to do so, without remanding a matter to the RO. Roebuck, 20 Vet.App. at 816. Specifically, Mr. Roebuck claimed entitlement to service connection for a lung disorder as secondary to tobacco use and nicotine dependence and also as secondary to asbestos exposure. In December 2002, the Board issued a decision denying service connection for a lung disorder as secondary to nicotine dependence and, in the same decision, expressly stated that it would also issue a separate decision concerning the asbestos exposure theory of causation. Less than one year later, the Board issued another decision denying service connection for a lung disorder as secondary to asbestos exposure. Id. at 317. The Court held that the first Board decision was not final where, “in the unique circumstances” presented, the Board (1) bifurcated its decision of Mr. Roebuck’s lung disorder claim, (2) denied service connection for a lung disorder under a nicotine dependence theory, and (3) “stated that it would ‘prepare a separate decision addressing [the issue]’ of service connection for a lung disorder under an asbestos exposure theory.” Id. at 309, 316.
The Roebuck Court held that
when a claimant raises more than one theory in support of a claim during the time while that claim is still pending before VA, if the Board bifurcates those theories or arguments and addresses them in separate decisions, the time for appeal is not ripe until the Board issues a final decision denying all theories [and, u]nder those circumstances, the 120-day requirement for filing a[n NO A] will not begin to run until the Board has denied all theories in support of the claim that it has identified for consideration.
Id. at 315-16 (emphasis added). In holding that the first Board decision was nonfi-nal, the Court noted that “to adjudicate a claimant’s appeal of one theory of a claim while the Board is still deliberating on another theory supporting that same claim, our efforts would be potentially du-plicative and unnecessary.” Id. at 315 (emphasis added). Thus, among the unique circumstances of Roebuck was the Board’s issuance of its decision in two parts without remanding either theory to the RO for further development and read-judication. Id. at 316 (noting that the Board’s decision “was issued by the Board in two parts separated by less than a year”). Accordingly, Roebuck is limited to the situation where the Board, in its decision denying one theory, specifically states that the Board will be issuing, without a remand to the RO, a second decision on another theory of the same claim. To read Roebuck more broadly creates a new exception to the rule of finality and ignores the fact that Roebuck explicitly was based on unique circumstances.
Thus, Roebuck is not dispositive of the issue here regardless of whether the appellant is deemed to have filed two separate claims or one claim. First, if we assume the appellant sought benefits for two separate disabilities — a diagnosed lung disorder, described as both pneumonia and bronchitis, and an undiagnosed chronic condition manifested by shortness *174 of breath alleged to be the result of his service in the Persian Gulf — Roebuck is simply inapposite because the Court in that ease found that there was one claim. Id. at 315-16; see also Elkins v. Gober, 229 F.3d 1369, 1376 (Fed.Cir.2000) (holding that “[bjecause ... each ‘particular claim for benefits’ may be treated as distinct for jurisdictional purposes, a veteran’s claims may be treated as separable on appeal”). Second, if we assume the appellant raised two theories in support of a single claim for VA benefits for a lung condition — direct service connection and presumptive service connection available to Persian Gulf War veterans — the facts are distinguishable from Roebuck because here the Board issued a final decision with regard to benefits based upon direct service connection, and remanded to the RO for consideration of benefits based upon presumptive service connection, whereas in Roebuck, the Board denied one theory and expressly stated that it would issue a second Board decision on the second theory.
We next consider the Federal Circuit’s decision in Joyce, supra, which held that a decision of our Court was not final where our Court had affirmed in part, reversed in part, and vacated in part a Board decision finding no clear and unmistakable error (CUE) in an RO decision denying disability compensation benefits and remanding a matter to the Board. 443 F.3d at 849-50. Our Court affirmed the Board’s determination of no CUE as to the RO’s finding that the presumption of soundness was rebutted. We reversed the Board determination of no error in the RO finding that the presumption of aggravation had been rebutted under the applicable regulation and remanded for the Board to determine whether the RO’s error was outcome determinative. We vacated the Board’s denial of CUE and remanded for readjudication on the service-connection question. The appellant appealed to the Federal Circuit.
The parties in Joyce disagreed as to whether there was a single claim — one for service connection that is established either through the presumption of soundness or the presumption of aggravation— or two separate claims — one for service connection and one for aggravation. The Federal Circuit stated that it need not decide which view of the underlying claims was correct because under either view “there is a lack of finality.” 443 F.3d at 849. The Federal Circuit concluded that if there is only a single claim, review by the Federal Circuit was unavailable because the remand order did not satisfy the test announced in Williams v. Principi, 275 F.3d 1361 (Fed.Cir.2002), which held that the Federal Circuit may review a nonfinal remand order if three conditions were met. Joyce, 443 F.3d at 850. The Federal Circuit stated that if there were separate claims for service connection and aggravation, Elkins, 229 F.3d at 1376, was applicable, and the “assertedly separate claims are inextricably intertwined because both claim compensation for the same disability.” 443 F.3d at 850. The Federal Circuit concluded that “[rjeview of the Veterans Court’s decision as to the service connection claim is unavailable under Elkins because it would ‘disrupt the orderly process of adjudication.’ ” Id.
We conclude that the Federal Circuit’s decision in Joyce, similar to Roebuck, does not answer the question now before the Court. Joyce discussed the reviewability of decisions of this Court by the Federal Circuit. Joyce did not discuss the finality of a Board decision and the jurisdictional basis on which this Court reviews Board decisions. In Joyce, the Federal Circuit expressly noted: “Our review of decisions of the Court of Appeals for Veterans Claims is governed by 38 U.S.C. § 7292. *175 While that statute does not explicitly impose a final judgment requirement, we have nonetheless ‘generally declined to review nonfinal orders of the Veterans Court’ on prudential grounds.” 443 F.3d at 849 (quoting Williams, 275 F.3d at 1363). Accordingly, the Federal Circuit in Joyce did not review or interpret the statutes from which this Court derives its jurisdiction — 38 U.S.C. §§ 7252(a) and 7266(a). To the extent Joyce is argued to be instructive, it did not resolve the issue of one claim versus two claims, instead finding that either approach would yield the same result. And, it did not resolve the issue of whether a decision deemed final by the Board with regard to one claim or one theory supporting a claim for benefits, and for which notice of appellate rights had been provided to the claimant— but for which no appeal was filed within 120 days of that Board decision — nevertheless could be appealed when the Board ultimately rendered a decision on the remaining claim or theory that might support an award of benefits.
A Elkins and Administrative Finality
In Elkins, the Federal Circuit provided guidance as to the applicable jurisdictional finality standard in the context of appeals from decisions that do not dispose of all claims but instead include a remand. El-kins established that judicial review is available for a claim for which final judgment has been entered even if other claims presented in the same appeal have been remanded. Id. The Federal Circuit in El-kins held that it had jurisdiction to review the veteran’s headache claim and neck argument on appeal from our Court notwithstanding our remand of the veteran’s back claim and notwithstanding the fact that all claims were related to the same accident and were presented to this Court in a single appeal. Elkins, 229 F.3d at 1374. This Court had affirmed the Board’s denial of the headache claim and had rejected Mr. Elkins’s argument that the medical evidence regarding his headaches also established a claim for service-connected neck pain. The Federal Circuit explained that in deciding that it could treat the claims as separable on appeal, it was adopting the approach in Dewey Electronics Corp. v. United States, 803 F.2d 650, 654 (Fed.Cir.1986). The Federal Circuit stated that “[t]he relevant consideration, in determining whether an administrative adjudication is sufficiently ‘final’ is “whether the process of the administrative decision-making has reached a stage where judicial review will not disrupt the orderly process of adjudication and whether rights or obligations have been determined or legal consequences will flow from the agency action.’ ” Elkins, 229 F.3d at 1373 (quoting Dewey, 803 F.2d at 654). Applying this Elkins standard to an appeal from our Court, the Federal Circuit concluded that, because the legal issues presented on appeal were all distinct (i.e., whether Mr. Elkins had presented “new and material evidence” sufficient to reopen his claim for back injuries, whether he had presented a “well grounded” claim for headaches, and whether the medical reports furnished with his headache claim support a claim for neck injuries), its review of our Court’s decision with respect to the headache and neck matters would not “disrupt the orderly process of adjudication below with respect to the remanded [back injury] claim.” Id. at 1375-76.
In discussing its practice of treating a veteran’s distinct issues as separable on appeal (and in allowing sequential appeals on separate issues or claims), the Federal Circuit in Elkins discussed its prior decisions regarding similar matters. See Elkins, 229 F.3d at 1374-75. The Federal Circuit noted its prior holdings that a veteran’s overall claim for benefits is comprised of separate issues and that our *176 Court has jurisdiction to consider an appeal concerning one or more of those issues. See, e.g., Grantham v. Brown, 114 F.3d 1156, 1158-59 (Fed.Cir.1997) (elements of a claim may be appealed sequentially to U.S. Court of Appeals for Veterans Claims); see also Barrera v. Gober, 122 F.3d 1030, 1032 (Fed.Cir.1997) (holding that the U.S. Court of Appeals for Veterans Claims has jurisdiction to review a decision concerning one of the issues that comprise a claim, i.e., the issue of disability rating). The Federal Circuit stated that, unlike district court cases where a plaintiff must present all claims for relief arising from an event in a single complaint and then appeal all at once, “there is no requirement that a veteran’s various claims for relief be simultaneously filed and adjudicated, either upon initial review or on appeal.” Elkins, 229 F.3d at 1375. The Federal Circuit further stated: “Rather, we have recognized that the unique statutory process of adjudication through which veterans seek benefits may necessarily require that the different issues or claims of a case be resolved at different times, both by the agency of original jurisdiction and on appeal.” Id.
Against this backdrop, we conclude that a final Board decision denying VA disability compensation based upon direct service connection, while the consideration of benefits based upon presumptive service connection is still under adjudication, constitutes a final decision subject to separate appeal to the Court.[3] Our conclusion is consistent with the recognition in Elkins that VA’s “unique statutory process of adjudication” does not necessarily require different issues to be resolved all at once. See Elkins, 229 F.3d at 1375-76. In meritorious cases where the Board denies benefits based on a particular issue with distinct criteria and remands for further adjudication another issue of establishing entitlement to benefits, a veteran might otherwise have to wait years for resolution and possibly benefits to which he or she is entitled. Indeed, as illustrated by the circumstances in the instant case, it took VA more than five years after its decision denying direct service connection for a lung disability under section 1110 to complete the remand proceedings pertaining to entitlement to the presumption of service connection for undiagnosed illnesses incurred in, or manifested during a presumptive period following, service in the Persian Gulf under section 1117.
In addition, to require a final decision with respect to all claims for benefits, or theories in support of a claim for benefits — regardless of whether they raise distinct questions, are based on different statutory provisions, or rely on different causes of a disability — may have the unintended effect of encouraging the Board to delay making a determination on any mat *177 ter until all matters are fully developed and ready for disposition. In such a case, if the Board decides one matter and remands another matter, when the remanded matter is later ready for the Board’s disposition (after all instructions on remand have been fulfilled), the Board would be required to revisit its decision on the first matter to ensure that it currently complies with all law and regulations. It is unlikely that the Board will spend its resources adjudicating the first matter if that were the law, and the Board might very well decide that it would be more efficient to delay any adjudication until all claims for benefits, or theories in support of a claim for benefits, were ready for a decision. The veteran would thus be denied the opportunity of judicial review of an adverse decision until all issues addressed in the Board decision or all possible bases for supporting a claim for benefits have been finally decided. Such an outcome would serve neither the veteran nor the VA’s interest in providing a timely award of benefits or achieving final resolution of claims.

5. Reviewability Versus Finality of a Board Decision

The Court recognizes that this Court’s decision in Harris discussed this Court’s jurisdictional statutory requirement of a “final Board decision” and the question of when a Board decision is appealable. 1 Vet.App. at 181-83. In Hams, the Court held that a Board decision that denied an increased rating for service-connected anxiety neurosis was not a final decision over which this Court had jurisdiction because the claim was “inextricably intertwined” with a claim for service connection for a heart disorder that the Board had referred to the RO. Id. at 183. The Court in Harris stated that it would neither review Board decisions “in a piecemeal fashion nor unnecessarily interfere with the [VA] deliberative process.” Id. The Court stated:
A decision by the RO to grant appellant’s referred heart disorder claim could have a significant impact upon appellant’s claims for an increased rating for anxiety neurosis. This, in turn, could render any review by this Court of the decision on the anxiety neurosis claim meaningless and a waste of judicial resources.
Id. at 183. Accordingly, the Court determined that piecemeal review could render a decision on one claim “meaningless” and would be a “waste of judicial resources.” Id. The Court noted that the evidence in support of both claims was “replete with statements that the veteran’s mental state was a result of his physical condition,” and further noted that the crux of the appellant’s claim for benefits was that “his heart disorder [was] the cause of his anxiety neurosis.” Id. Because the claims appeared “so closely tied” together, the Court concluded that the Board decision did not constitute a final decision and dismissed the appeal for lack of jurisdiction. Id.
The Harris court determined that a holding by the Court that claims are inextricably intertwined — i.e., where a referred claim could have a significant impact on a denied claim that is being appealed — mandates dismissal of the appeal. The Court today overrules Harris to the extent it stands for the proposition that this Court has no jurisdiction over a Board decision that denied a claim if that claim is “inextricably intertwined” with another claim that the Board remanded. The Court has jurisdiction over such matters on direct appeal, but may decline to exercise its jurisdiction in such cases, as we frequently do. See, e.g., Hunt v. Nicholson, 20 Vet.App. 519, 525-26 (2006) (declining to review denial of entitlement to *178 vocational rehabilitation benefits and remanding for readjudication because issue was dependent on — “inextricably intertwined” with — whether, on remand, the Board reopens and grants a claim for service connection) (citing Harris, supra); Anglin v. West, 11 Vet.App. 361, 367 (1998) (remanding claim for a bladder disorder, for which there was medical evidence that it was connected to a back problem, because it was “inextricably intertwined” with a claim for a back condition that the Court was remanding) (citing Harris, supra); Holland v. Brown, 6 Vet.App. 443, 447 (1994) (holding that a Board decision denying an increased rating for service-connected rheumatoid arthritis is final even though Board referred to RO “a TDITJ rating claim” based on rheumatoid arthritis because referred claim “may not necessarily affect the claim on appeal”). Overruling Hams, we now hold that where a Board decision purports to be a final decision, the Board issues a notice of appellate rights, and the appellant timely appeals to the Court, this Court has jurisdiction to review the Board decision for error. However, on review, the Court retains its discretion to determine at the threshold that a claim or theory denied by the Board in any such decision or portion of a decision on review is so inextricably intertwined with matters still pending before VA that it should be remanded to VA to await development or disposition of a claim or theory not yet finally decided by VA.[4]
We make clear today, that this Court’s jurisdiction to review a Board decision denying a claim is not controlled by whether the claim denied by the Board is “inextricably intertwined” with another claim that was either remanded or referred by the Board to the RO because the facts underlying the two claims are so closely tied together. Rather, this Court’s jurisdiction is controlled by whether the Board issued a “final decision” — i.e., denied relief by either denying a claim or a specific theory in support of a claim and provided the claimant with notice of appellate rights. 38 U.S.C. § 7266(a); see Percy v. Shinseki, 23 Vet.App. 37, 45-46 (2009) (noting imprecise use of term “jurisdictional” in caselaw and VA regulations); see also Bowles v. Russell, 551 U.S. 205, 127 S.Ct. 2360, 2365-66, 168 L.Ed.2d 96 (2007) (defining as jurisdictional, limits in statute as to when and under what conditions a court may hear a case). We hold that only after the Court determines that it has jurisdiction does it then engage in consideration of questions concerning whether the appeal involves multiple claims or issues that are inextricably intertwined. If we find that the matter on appeal is inextricably intertwined with an issue or claim still pending before VA, the Court generally will decline, for reasons of *179 judicial economy or on prudential grounds, to review the merits of the claim or issue adjudicated in the Board decision then before the Court, and remand it for further adjudication, as appropriate, with the other “inextricably intertwined” matters still being adjudicated below.
Following today’s decision, a claimant will no longer be presented with the dilemma of whether he should appeal or risk having his right to appeal vitiated for failure to timely appeal. See, e.g., Gurley v. Nicholson 20 Vet.App. 573, 575 n. 1 (2007). It is not the Court’s province to dictate how VA implements its statutory authority to dispose of appeals in a timely and efficient manner so long as it permissibly does so within controlling statutes. See Ramsey v. Nicholson, 20 Vet.App. 16, 27 (2006) (“The general authority of the Secretary to interpret and apply the relevant law and of the Board to dispose of appeals in a timely manner authorizes the Secretary to manage the Board in its dispositions of cases and to consider the relevant law in its control of the dispositions of the appeals pending on the Board’s docket and to do so with economy of time and effort.”).
While it does not fall to this Court to design or redesign the YA adjudication process, it is our province to consider a timely appeal from a claimant who has been denied relief based on one theory, has received notice of his appellate rights, and who argues that the Board erred in issuing the denial. See, e.g., Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 821, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (Stewart, J., joined by Blackmun and Stevens, JJ., dissenting) (“[Fjederal courts have a ‘virtually unflagging obligation ... to exercise the jurisdiction given them.’ ”). In such a case, the Court can then determine whether the benefits denied or limited are inextricably intertwined with a remanded issue or claim, or whether the Board erred in issuing the denial or limitation of benefits that was appealed. Parties are well-served by a process that allows the Court to review assertedly final decisions to determine (1) whether one issue on which the Board denied benefits is inextricably intertwined with other issues that the Board remanded, and (2) whether such a Board decision should be reversed, modified, or the matter remanded, based on Board error, including misapplication of the law, failure to develop a complete record, or other defects that would otherwise not be addressed for years thereafter. By a veteran’s timely exercise of appellate rights, errors by the Board may be corrected as early in the process as possible, rather than many years later, when remand proceedings on a separate matter are completed. Claimants not satisfied with a clear, final decision of the Board, accompanied by notice of their appellate rights, should appeal any such decision in a timely manner (or request Board reconsideration) to preserve those appellate rights. A claimant should understand that “Board denial” on the issues coupled with a notice of appellate rights means “file an appeal or the denial becomes final,” because it is in the control of the claimant, not the Court or the Secretary, whether to appeal once the Board issues its decision. If an appeal is filed, the Court will determine issues of finality and whether the issues or claims are inextricably intertwined on a case-by-case basis. Failure of a claimant to appeal (or seek reconsideration) presents the risk, as we see in the case before us, that the matters finally decided by the Board will not be appealable after the time to appeal passes.
B. The Finality of the September 1998 Board Decision
In the September 1998 decision, the Board considered the issues of appel *180 lant’s entitlement to benefits for a lung disability based either directly or through the presumption of service-connection under section 1117. The Board took two actions with respect to his appeal for benefits. First, the Board denied benefits based on entitlement to service connection on a direct basis. R. at 272 (“The claim for entitlement to service connection for a lung disorder on a direct basis is denied.”). The Board determined that there was “no competent medical evidence linking the veteran’s current lung disorder on a direct basis to service” (R. at 267), and thus found that issue not “well-grounded”[5] (R. at 267, 271). Second, the Board remanded, for further development, entitlement to service connection under 38 U.S.C. § 1117 for a chronic disorder manifested by shortness of breath, due to an undiagnosed illness, secondary to Persian Gulf War service. R. at 272. The Board stated that it was “unclear whether there [was] medical evidence to support the veteran’s claimed respiratory symptoms or whether any of the symptoms are affiliated with a diagnosed illness” and directed the RO to schedule a VA Persian Gulf examination. R. at 273-74.
At the time of the 1998 decision, the Board considered its denial final and so notified the appellant. At the time the Board issued its September 1998 decision, the Board notified the appellant as follows:
NOTICE OF APPELLATE RIGHTS:
Under 38 U.S.C. [] § 7266 ..., a decision of the Board of Veterans’ Appeals granting less than the complete benefit, or benefits, sought on appeal is appeal-able to [the Court] within 120 days from the date of mailing of notice of the decision, provided that a Notice of Disagreement concerning an issue which was before the Board was filed with the agency of original jurisdiction on or after November 18, 1988.... The date that appears on the face of this decision constitutes the date of mailing and the copy of this decision that you have received is your notice of the action taken on your appeal by the Board of Veterans’ Appeals. Appellate rights do not attach to those issues addressed in the remand portion of the Board’s decision, because a remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (1997).
R. at 275-76. As quoted above, the Board specifically noted that the appellate rights did not attach to the matter that was remanded, which constituted only a “preliminary” decision of the Board, and that a remand “does not constitute a decision of the Board on the merits of your appeal.” R. at 276. The Board’s notice, therefore, informed the appellant that the appellate rights pertained to the Board’s denial of service connection for a lung disability on a direct basis, as the matter that was not remanded. R. at 276. This is consistent with the Court’s caselaw that the Board’s remand of a veteran’s claim is not an adverse final decision over which the Court had jurisdiction. See Acosta v. Principi, 18 Vet.App. 53, 59 (2004); Breeden, 17 Vet.App. at 475. The appellant was thus on notice that VA considered the September 1998 decision of the Board to be a final decision on direct service connection for a lung disability. The Court notes that the appellant does not raise any argument that *181 challenges either the sufficiency of the notice of appellate rights accompanying the Board decision or his receipt of that decision or his receipt of the notice of appellate rights. See App. Br. at 1-16; Reply Br. at 1-7.
The appellant did not file an NOA of the Board’s September 1998 decision within 120 days of the date that YA mailed notice of the September 1998 decision to him nor did he seek reconsideration from the Board. See Reed v. Peake, 23 Vet.App. 64 (2008) (“The only exception to this 120-day rule is in those cases in which the claimant has (1) filed a motion for Board reconsideration within 120 days after the mailing date of the Board’s decision; and then (2) filed an NOA within 120 days after the Board Chairman has denied the reconsideration motion”); Rosler v. Derwinski, 1 Vet.App. 241, 249 (1991). Just as an appellant has an obligation to cooperate in the development of evidence pertaining to his claim because failure to do so could subject him to the risk of an adverse adjudication based on an incomplete and underdeveloped record, see Kow-alski v. Nicholson, 19 Vet.App. 171, 178 (2005), failure to appeal a purportedly final Board decision may adversely affect an appellant if the Court agrees that the decision is final and therefore we have no jurisdiction over the claim. Thus, as stated above, veterans who receive a purportedly final decision denying benefits from the Board should timely appeal that denial, regardless of whether other claims or issues remain pending, or they run the risk of finding years later that in failing to appeal they have thereby forfeited their appellate rights concerning the earlier decision. Here, rather than protecting his appellate rights at the time of the 1998 Board decision, the appellant waited and only filed an NOA after the April 2004 Board decision. He now argues that the September 1998 decision was not final (App. Br. at 5), but that argument is not persuasive.
Based on the totality of the circumstances of this case, the Court holds that the September 1998 Board decision was final concerning the issue of section 1110 compensation for direct service connection for a lung disability. See Bingham, 421 F.3d at 1349 (“We cannot create a third exception to the rule of finality.”); Cook v. Principi, 318 F.3d 1334, 1337 (Fed.Cir.2002) (en banc) (recognizing only two statutorily recognized exceptions to the rule of finality, neither of which are applicable here). Because the appellant did not file an NOA -within 120 days after VA mailed notice of the Board’s final September 1998 decision, the Court lacks jurisdiction to review the September 1998 Board decision. See 38 U.S.C. § 7266(a).[6] The Court is *182 thus limited to a review of the merits of the April 2004 Board decision denying service connection on a presumptive basis for symptoms of a chronic disability resulting from an undiagnosed illness from military service in the Persian Gulf.
C. Merits of the August 2004 Board Decisions
With regard to the April 2004 Board decision, the appellant argues only that the Board erred because it had a duty, under 38 C.F.R. § 19.9, to seek clarification of Dr. Plump’s December 2001 medical opinion “before[,] or in addition to,” ordering an additional VA medical examination. App. Br. at 10. He contends that, in ordering an additional VA medical examination in lieu of seeking clarification of Dr. Plump’s opinion, VA violated its duty to assist. App. Br. at 10-12. At oral argument, counsel for the appellant asserted that VA’s request for an additional medical examination “impermissibly narrowed” VA’s consideration of Dr. Plump’s December 2001 opinion and that the appellant was prejudiced by VA’s failure to seek clarification of Dr. Plump’s opinion because his opinion was favorable evidence that, if clarified, could have substantiated the appellant’s claim for service connection on a presumptive basis for symptoms of an undiagnosed illness.
The Board’s CDU noted that in providing the December 2001 VA medical opinion, Dr. Plump “found that the veteran suffered from a known diagnosis of mild chronic bronchitis, but offered an opinion that the veteran’s ‘shortness of breath due to undiagnosed illness [was] at least as likely as not due to his Gulf War service.’ ” R. at 365. The CDU concluded that because “these findings appear to be inconsistent, another examination must be scheduled.” Id. The CDU then ordered that VA schedule the appellant for a VA Persian Gulf examination and indicated that the appellant “must be scheduled with an examiner other than the examiner of 12/13/01, Dr. Plump.” Id.
At the time of the CDU’s July 2002 request, § 19.9 provided, in relevant part:
(a) General. If further evidence, clarification of the evidence, correction of a procedural defect, or any other action is essential for a proper appellate decision, a Board Member or pan el of Members may:
(1) Remand the case to the agency of original jurisdiction, specifying the action to be undertaken; or
(2) Direct Board personnel to undertake the action essential for a proper appellate decision.
38 C.F.R. § 19.9 (2002). The plain language of § 19.9 does not limit the Board to seeking clarification of the evidence, nor has the Court adopted the “mandatory clarification” interpretation of § 19.9 that the appellant advances in his brief. Rather, the regulation contemplates situations in which the Board may choose to obtain “further evidence” instead of requiring clarification of the existing evidence; and, it is well established that the Board has the discretion to determine whether further development is needed to make a decision on a claim. 38 C.F.R. § 19.9(a) *183 (2002); see Shoffner v. Principi, 16 Vet.App. 208, 213 (2002); Winsett v. West, 11 Vet.App. 420, 426 (1998) (“[Wjhether the Board chooses to refer a particular case for an independent medical opinion is entirely within its discretion.”); see also 38 U.S.C. § 7109(a) (the Board may seek an advisory medical opinion when such an opinion “is warranted by the medical complexity or controversy involved”); 38 C.F.R. § 3.304(c) (2009) (“The development of evidence in connection with claims for service connection will be accomplished when deemed necessary.”).
However, it is equally well established that VA must develop claims and gather evidence in a neutral manner. See Austin v. Brown, 6 Vet.App. 547, 553 (1994) (“[BJasic fair play requires that evidence be procured by the agency in an impartial, unbiased, and neutral manner.”). In seeking a medical opinion, VA “may not suggest an answer or limit the field of inquiry by the expert.” Bielby v. Brown, 7 Vet.App. 260, 268 (1994); see Colayong v. West, 12 Vet.App. 524, 534 (1999) (holding that the RO’s request to a VA medical examiner to “feel free to refute the private physician’s report” was fatally flawed and compromised the fairness of the adjudication process). Moreover, “VA may not pursue ... development if the purpose is to obtain evidence against the claim.” Hart v. Mansfield, 21 Vet.App. 505, 508 (2007); see Mariano v. Principi, 17 Vet.App. 305, 312 (2003) (“Because it would not be permissible for VA to undertake such additional development if a purpose was to obtain evidence against an appellant’s case, VA must provide an adequate statement of reasons or bases for its decision to pursue further development where such development reasonably could be construed as obtaining additional evidence for that purpose.”); Rose v. West, 11 Vet.App. 169, 172 (1998) (noting that “it is not the function of judicial review simply to accord the government a remand to obtain ... evidence” that rebuts the appellant’s showing of a nexus between his in-service injury and a current diagnosed disability).
In its April 2004 decision, the Board found that VA “ha[d] made reasonable and appropriate efforts to assist the appellant in obtaining the evidence necessary to substantiate the claim currently under consideration, to include several VA examinations.” R. at 4. With regard to Dr. Plump’s December 2001 medical opinion, the Board noted “that despite the finding of an undiagnosed illness relating to respiratory symptomatology, it is noteworthy that the examiner did indeed offer a specific diagnosis of mild chronic bronchitis.” R. at 11. The Board found that “[a] diagnosis of both an undiagnosed illness and a diagnosed condition pertaining to the same symptoms is inconsistent.” R. at 11-12.
Dr. Plump rendered the following opinion in December 2001:
DIAGNOSIS: 1) Mild chronic bronchitis. 2) Diffusion capacity and spirome-try within normal limits. 3) Refractory pneumonia March 1994.
OPINION: It is this provider’s medical opinion that the patient’s shortness of breath due to an undiagnosed illness is at least as likely as not due to the Gulf War service. This provider is unable to render an opinion as to the etiological basis of the disorder and its date of onset.
R. at 350.
Accepting the Board’s view that Dr. Plump’s diagnosis and opinion are inconsistent,[7] it is wholly unclear why the Board *184 directed that VA provide a new medical examination, rather than simply seek clarification of Dr. Plump’s opinion. It is equally unclear why the Board directed that the new examination be provided by an examiner “other than” Dr. Plump. R. at 365.
The Board’s failure to adequately explain the reasons for its order leaves the Court to speculate as to its reasoning; such speculation reasonably includes the possibility that the purpose was to avoid a possible favorable opinion from Dr. Plump. This is not permitted. See Austin, supra; see also Hart, Mariano, and Rose, all supra. Under these circumstances, the Board’s statement of reasons or bases is inadequate. See Mariano, 17 Vet.App. at 312 (‘VA must provide an adequate statement of reasons or bases for its decision to pursue further development where such development reasonably could be construed as obtaining additional evidence for that purpose.”); Caluza, 7 Vet.App. at 506 (the Board’s statement of the reasons or bases for its decision must “account for the evidence which it finds to be persuasive or unpersuasive, analyze the credibility and probative value” of the evidence, and “provide the reasons for its rejection of’ any material evidence favorable to the appellant). The Board’s rejection of Dr. Plump’s December 2001 VA medical opinion, without seeking clarification or adequately explaining why such clarification was unnecessary, frustrates appellate review. See Allday v. Brown, 7 Vet.App. 517, 527 (1995) (the Board’s statement of the reasons or bases for its decision “must be adequate to enable a claimant to understand the precise basis for the Board’s decision, as well as to facilitate review in this Court”). Accordingly, remand is necessary.
On remand, and given the Board’s view that Dr. Plump’s diagnosis and opinion are inconsistent, the Board either must seek clarification of Dr. Plump’s December 2001 medical opinion indicating that the appellant had an undiagnosed illness manifested by shortness of breath resulting from Persian Gulf service; or, the Board must provide a well-reasoned statement, adequate to facilitate the Court’s review, explaining its decision not to seek such clarification. The Board must further ensure that VA has complied with the notice requirements of 38 U.S.C. § 5103(a). See Mayfield v. Nicholson, 444 F.3d 1328, 1333 (Fed.Cir.2006) (holding that section 5103(a) notification is not satisfied by an aggregation of pre- and postdecisional notices from which a claimant might have been able to infer what evidence VA found lacking). On remand, the appellant is free to submit additional evidence and to raise his arguments to the Board, and the Board is required to consider them. See Kay v. Principi, 16 Vet.App. 529, 534 (2002).
III. CONCLUSION
Based on the foregoing analysis and a review of the record on appeal, the Board’s April 7, 2004, decision is VACATED and the appellant’s claim for presumptive service connection for an undiagnosed chronic *185 condition alleged to be the result of service in the Persian Gulf under 38 U.S.C. § 1117 is REMANDED for further proceedings consistent with this decision. The appellant’s appeal as to matters finally decided in the September 1998 Board decision is DISMISSED for lack of jurisdiction.
MOORMAN, Judge, filed the opinion of the Court. KASOLD, Judge, filed a separate concurring opinion. HAGEL, Judge, filed a separate opinion concurring in the result and dissenting in part. LANCE, Judge, filed a separate opinion concurring in part and dissenting in part, in which SCHOELEN, Judge, joined.

. Section 1110 of title 38, U.S.Code, provides basic entitlement to compensation for a disability resulting from an injury or disease contracted in the line of duty in active military service. 38 U.S.C. § 1110; see 38 C.F.R. § 3.303(a) (2009) (provides compensation for “a particular injury or disease resulting in disability [that] was incurred coincident with service”). In order to establish entitlement to direct service connection for a disability, the appellant must show (1) "competent evidence of current disability [by way of] a medical diagnosis”; (2) “incurrence or aggravation of a disease or injury in service [by way of] lay or medical evidence”; and (3) “a nexus between the in-service injury or disease and the current disability [by way of] medical evidence.” Caluza v. Brown, 7 Vet.App. 498, 506 (1995), aff'd per curiam, 78 F.3d 604, 1996 WL 56489 (Fed.Cir.1996) (table); see Hickson v. West, 12 Vet.App. 247, 252 (1999).

. In order to establish entitlement to service connection under section 1117, the evidence must show that the appellant is a Persian Gulf veteran who (1) exhibits objective indications; (2) of a chronic disability; (3) which became manifest either during active military service in the Southwest Asia theater of operations during the Persian Gulf War, or "to a degree of 10% or more not later than [September 30, 2011]”; and the evidence must show "that (4) such symptomatology by history, physical examination, and laboratory tests cannot be attributed to any known clinical diagnosis.” Gutierrez v. Principi, 19 Vet.App. 1, 7 (2004). Section 1117 provides for entitlement to compensation on a presumptive basis to a Persian Gulf War veteran who complains of having an undiagnosed illness that is (or illnesses that are) 10% or more disabling during the presumptive period established by the Secretary. 38 U.S.C. § 1117(a)(1)(A) and (B); see Gutierrez, 19 Vet.App. at 6. By definition, section 1117 only provides compensation for symptoms of a chronic disability that have not been attributed to a "known clinical diagnosis.” 38 C.F.R. § 3.317(a)(1)(h) (2009); see Stankevich v. Nicholson, 19 Vet.App. 470, 472 (2006) ("The very essence of an undiagnosed illness is that there is no diagnosis.”); Gutierrez, 19 Vet.App. at 10 (a Persian Gulf War veteran’s symptoms "cannot be related to any known clinical diagnosis for compensation to be awarded under section 1117”); 60 Fed.Reg. 6660, 6665 (Feb. 3, 1995) ("The undiagnosed illness provisions of Public Law 103-446, as implemented by § 3.317, were specifically intended to relieve the unique situation in which certain Persian Gulf War veterans found themselves unable to establish entitlement to VA compensation because their illnesses currently cannot be diagnosed.”).

. The Court recognizes the Federal Circuit’s decision in Bingham v. Nicholson, 421 F.3d 1346 (Fed.Cir.2005), which held that all theories of service connection were disposed of when the Board decision there had denied service connection. Unlike the factual circumstances presented in Bingham, however, where the Board denied a claim for service connection on one theory and was silent as to other theories of service connection, in the present case, the Board specifically remanded a separate theory for development, thereby foreclosing any argument that its denial of direct service connection could be interpreted as a final decision on the separate theory of presumptive service connection. See also D’Aries v. Peake, 22 Vet.App. 97 (2008) (exercising jurisdiction over appeal of Board decision that denied service connection for cause of veteran’s death even while claim for DIC was denied in a separate Board decision and remanded in a separate Court decision); Andrews v. West, 16 Vet.App. 384, 1999 WL 44307 (1999) (table) (exercising jurisdiction over appeal of Board decision denying benefits based on direct service connection while benefits based on secondary service connection were still being adjudicated).

. Contrary to the view expressed by Judge Hagel in his separate opinion, we observe that this Court’s decision in Harris v. Derwinski, 1 Vet.App. 180 (1991), is implicated, and its discussion necessary, regardless of whether this case involves one claim or two claims. Even if this Court were to hold that there are two claims involved here, Hanis dictates that we determine, as part of this appeal, whether the "claim” for service connection for a lung condition on a direct basis that was denied in 1998 is "inextricably intertwined” with the "claim” for presumptive service connection for a chronic disability resulting from an undiagnosed illness based on service in the Persian Gulf. If so, Hanis would not have permitted this Court to have jurisdiction over an appeal filed within 120 days of the 1998 denial but would permit jurisdiction now to review the 1998 denial as part of the current appeal of the denial of service connection under the presumptive provisions for Persian Gulf War veterans. Because a determination as to whether claims are inextricably intertwined does not properly determine this Court’s jurisdiction, we overrule that aspect of Hanis.

. The law in effect in 1998 provided that claims must be "well grounded” in order to invoke VA’s duty to assist in their development. See 38 U.S.C. § 5107. The Veteran's Claims Assistance Act of 2000, Pub.L. No. 106-475, 114 Stat.2096 (Nov. 9, 2000), amended section 5107 to eliminate the requirement of well-groundedness. See Luyster v. Gober, 14 Vet.App. 186 (2000) (per curiam order).

. In viewing the September 1998 Board denial as a nonfinal decision, our colleagues, Judges Lance and Schoelen, read our pan el decision in Roebuck as creating a new exception to the rule of finality that is inconsistent with established precedent. See Cook, 318 F.3d at 1337 (discussing two statutory exceptions to the rule of finality: (1) a finding of clear and unmistakable error under 38 U.S.C. 5109A or 7111, and (2) the receipt of new and material evidence to reopen a claim under section 5108); see also Knowles v. Shinseki, 571 F.3d 1167 (2009) (noting that "the law does not recognize a freestanding 'finality claim’ filed after the period for direct review has expired"). Contrary to this view, we observe that if Mr. Tyrues believed that the Board had erred in 1998 in denying him relief under a direct theory of service connection, his avenue to remedy that error was to file a direct appeal of the 1998 Board decision and argue for a remand to correct any errors, including any error in adjudicating the matter or in not remanding the matter for further development. Moreover, the dissent ignores our caselaw in which this Court reviews a Board decision and determines whether a matter decided by the Board is inextricably intertwined with a matter remanded to the Agency. See, e.g., Bagwell v. Brown, 9 Vet. *182 App. 337, 339-40 (1996). In addition, our colleagues’ current view is difficult to reconcile with their recent opinion in Brokowski v. Shinseki, 23 Vet.App. 79, 86-90 (2009) (exercising jurisdiction and affirming Board decision as to effective date issue even though Board had remanded the issue of an appropriate disability rating). Significantly, the dissent’s current view disregards the Court’s role in providing prompt judicial review of Board decisions that deny relief to veterans and would have this Court’s role reduced to a small, flickering light of hope at the end of the seemingly endless processing tunnel that often characterizes VA adjudications.

. Although the Board’s view is that Dr. Plump’s opinion is inconsistent with his diagnosis, the Court notes that it is also possible that Dr. Plump intended to diagnose the ap *184 pellant as having both mild chronic bronchitis and an undiagnosed illness manifested by shortness of breath. Pursuant to 38 U.S.C. § 1117, governing compensation for disabilities occurring in Persian Gulf War Veterans, compensation is available for either an undiagnosed illness or a "medically unexplained chronic multisymptom illness,” manifested by “signs or symptoms involving the upper or lower respiratory system.” 38 U.S.C. § 1117(a)(2)(B), (g)(8). Dr. Plump’s opinion therefore need not be read as inconsistent. Read as diagnosing the appellant as having both chronic bronchitis and an undiagnosed or "medically unexplained” illness, Dr. Plump’s opinion would be favorable evidence in support of the appellant's claim for service connection for an undiagnosed illness.