LANCE, Judge,
with whom SCHOELEN, Judge, joins concurring in part and dissenting in part:
I continue to concur in the majority’s outcome on the theory addressed in the *35 majority opinion in Tyrues v. Shinseki, 23 Vet.App. 166 (2009) (en banc) (Tyrues I). I also concur in the majority’s new analysis regarding the applicability of equitable tolling. However, I again write separately to state that I continue to disagree, for the reasons outlined in my dissent in Tyrues I, with the majority’s conclusion that we lack jurisdiction over the entire claim. As with my other dissenting colleague, I will not restate my prior opinion here. However, there are two points that are worth noting at this stage.
First, although there is no evidence that the appellant in this particular case could carry his burden to prove equitable tolling, the fundamental problem is still one of protecting the appellate rights of unsophisticated claimants who diligently pursue their claims. As I pointed out in my original dissent, the majority opinion is based upon the veteran-unfriendly presumption that this Court’s decision provides adequate notice to unrepresented claimants that they must immediately appeal a bifurcated decision or lose their appellate rights. 23 Vet.App. 166, 195 (2009) (Lance, J., concurring in part and dissenting in part). Thus, it is entirely possible for a claimant to diligently contest his or her claim only to discover that he or she has forfeited part of it because it is not obvious to a lay person that a Board decision must be appealed immediately when part of a claim has been remanded for further consideration. However, the solution to protecting diligent claimants is not to sub silentio overrule this Court’s decision by applying equitable tolling in the absence of evidence. Rather, it is to simply base our decision on a realistic expectation of diligence on the part of claimants who lack attorneys to advise them. Accordingly, the Supreme Court’s decision to remand this matter for further consideration in light of Henderson v. Shinseki, — U.S. -, 131 S.Ct. 1197, 179 L.Ed.2d 159 (2011), highlights one of the central flaws of the majority opinion.
Second, I am compelled to note that the Federal Circuit’s first decision in this case does not appear to actually address the situation presented by the facts of the case. See Tyrues v. Shinseki, 631 F.3d 1380 (Fed.Cir.2011), vacated, — U.S. -, 132 S.Ct. 75, 181 L.Ed.2d 2 (2011) (mem.). The Federal Circuit framed the issue as “whether the non-remanded portion of a mixed decision from the Board is final.” Id. at 1383. However, this case is not about a “mixed decision,” where the Board denies one claim while remanding another. This case is about the finality of a single claim that the Board bifurcates based upon different theories. Accordingly, when the Federal Circuit held that “[sjeparate claims are separately appeal-able. Each particular claim for benefits may be treated as distinct for jurisdictional purposes,” id., it misses the mark.
It is well established that separate claims are jurisdictionally separate, see, e.g., Elkins v. Gober, 229 F.3d 1369, 1376 (Fed.Cir.2000), and that all theories of entitlement to benefits for a particular condition are part of the same claim, see Schroeder v. West, 212 F.3d 1265, 1271 (Fed.Cir.2000); see also Clemons v. Shinseki, 23 Vet.App. 1, 5 (2009) (holding that the scope of a claim is generally defined by the symptoms for which a veteran is seeking compensation). Allowing separate claims addressed within one Board decision to be treated separately for purpose of appeal promotes speedy and efficient resolution of claims. Defining claims broadly to encompass all theories of entitlement is beneficial to veterans because it provides them with broad assistance and the earliest possible effective date in the frequent situation where the veteran is entitled to compensation for his condition, but the initial theory *36 of the case is not the one that leads to benefits.
The hard question presented by this case is how to handle VA’s practice of bifurcating a single claim and adjudicating different theories separately. That is the question to which the system needs a clear answer. I believe it is necessary and appropriate to point it out at this juncture so that when this case is again reviewed by the Federal Circuit, it can provide clear guidance in announcing whatever conclusion it reaches.
It is not common for a claim to be bifurcated based upon the Gulf War illness statute and the traditional compensation statute. However, it is quite common to see a claim where the theories of direct, presumptive, or secondary service connection have been bifurcated. If the majority opinion is affirmed, the courts will eventually have to sort through the myriad of ugly procedural issues that arise under Title 38 when the statutory term “claim” does not actually mean “claim,” at least some of the time. See Tyrues I, 28 Vet. App. at 195-96 (Lance, J., concurring in part and dissenting in part) (outlining several of the statutory interpretation problems created by the majority opinion). If the majority’s opinion is rejected, then the system will need to adjust the handling of a large number of cases to conform to the new interpretation. Although the proper outcome may be debatable, no final resolution is certainly the worst possible outcome.
Nevertheless, to be clear, I have great respect for the court above and I do not relish critiquing their decision. However, I believe that there are certain circumstances in which we are obligated to raise an issue that may frustrate our ability to follow the Federal Circuit’s mandate. See, e.g., Hayre v. Principi, 15 Vet.App. 48, 52-54 (2001). This is one of those times.
Accordingly, for the reasons stated, I continue to stand by my prior dissent and I urge the Federal Circuit to clearly and directly address this issue of exceptional importance when this matter returns to that court.