# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 10-582

JAY A. BOYD, APPELLANT,

V.

ROBERT A. MCDONALD,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued May 21, 2014                                    Decided August 5, 2014)

*Thomas J. Reed,* of Wilmington, Delaware, was on the brief for the appellant.

*Ronen Morris*, with whom *Will A. Gunn*, General Counsel; *Mary Ann Flynn*, Assistant General Counsel; and *Carolyn F. Washington*, Deputy Assistant General Counsel, all of Washington, D.C., were on the brief for the appellee.

Before KASOLD, *Chief Judge*, MOORMAN and BARTLEY, *Judges*.

MOORMAN, *Judge*:  The appellant, Jay A. Boyd, seeks review of two decisions of the Board of Veterans' Appeals (Board) that stem from his attempt to obtain an effective date earlier than May 26, 1999, for the grant of a 30% disability rating for postinflammatory hypopigmentation of the face, back, chest, and abdomen: (1) A June 11, 2008, Board decision that determined that Mr. Boyd failed to file a timely Substantive Appeal regarding the original April 1997 VA regional office (RO) decision that assigned an initial 10% disability rating, effective from March 26, 1990; and (2) an August 20, 2009, Board decision denying an effective date earlier than May 26, 1999, for a 30% rating.  At the outset, we note that this case involves a complex procedural picture involving two claim streams.  The first began with a March 1990 claim to reopen.  The second began when the RO deemed untimely a February 2000 Substantive Appeal filed in the first claim stream but then treated that Substantive Appeal as a claim for an increased rating.

This case was sent to a panel to address whether matters previously viewed by the Court to be inextricably intertwined and remanded may subsequently be adjudicated separately by the Board. We hold that, unless explicitly stated otherwise in a Court order, the Board retains the authority to adjudicate matters separately. Accordingly, Mr. Boyd is required to appeal the 2008 Board decision for this Court to review the Board's determination regarding the untimeliness of the Substantive Appeal even though the Board, in the same decision, remanded the matter of an earlier effective date for the 30% rating. Based on the circumstances here, we also hold that the finality of the 2008 Board decision was abated and Mr. Boyd's appeal from that decision is therefore premature, and we will dismiss the appeal from that decision. Because Mr. Boyd has not shown error in the 2009 Board decision, the Court will affirm that decision. The Court's affirmance of the 2009 Board decision does not affect Mr. Boyd's pursuit of an earlier effective date for service connection for hypopigmentation or a rating higher than 10% based on the first claim stream–i.e., the March 1990 claim that is the subject of the 2008 Board decision.

## I. FACTS

Mr. Boyd served in the U.S. Army from April 1968 to March 1970 and from September 1979 to September 1982, including service in the Republic of Vietnam. Record (R.) 2399, 2401, 2531. Shortly after his discharge in 1982, he filed a claim for service connection for hypopigmentation, which was denied. In March 1990, he sought to reopen the claim, and an April 1997 RO decision granted service connection for his skin condition and assigned a 10% disability rating, effective from March 26, 1990. R. at 2321-26.

In 1997, Mr. Boyd submitted a Notice of Disagreement (NOD), contesting his initial disability rating and the effective date of service connection, but, in March 1999, the RO issued a Statement of the Case (SOC) continuing Mr. Boyd's disability rating and effective date. R. at 2215-22, 2243. In February 2000, Mr. Boyd filed a Substantive Appeal again challenging his initial disability rating and the effective date of service connection. R. at 2200-01. In a March 2000 letter, however, the RO determined that the February 2000 Substantive Appeal was untimely and instead construed it as a claim for an increased rating. R. at 2199. This created the two claim streams noted at the outset: One arising from the 1990 claim to reopen the claim for service connection for

hypopigmentation, and one arising from the February 2000 claim for an increased rating, as construed by the RO.

As to the first claim stream, in May 2000, Mr. Boyd filed an NOD challenging the RO's determination that his Substantive Appeal relating to his initial disability rating and effective date of service connection was untimely. R. at 2168. In the NOD, Mr. Boyd stated that he had been misinformed by a VA counselor as to the amount of time he had to submit his appeal to the Board, which, he asserted, had the effect of tolling the Substantive Appeal period. With regard to the second claim stream, in July 2000, Mr. Boyd filed a statement in support of claim to which he attached, inter alia, private medical records from May 26, 1999. R. at 2150, 2166. Shortly thereafter, the RO awarded an increased disability rating of 30% for hypopigmentation, effective from May 26, 1999. R. at 2150-51. Subsequently, Mr. Boyd filed a Substantive Appeal in which he accepted the 30% increased rating, but sought an effective date earlier than May 1999 for his increased rating. R. at 2136-38.

The two claim streams were addressed together in a November 2002 Board decision, in which the Board (1) determined, as to the first claim stream, that a timely Substantive Appeal had not been filed relating to the initial 10% rating and effective date; and (2) denied, as to the second claim stream, an effective date earlier than May 26, 1999, for Mr. Boyd's increased 30% rating. R. at 1987-2000. The Board, however, did not address Mr. Boyd's contention that tolling of the Substantive Appeal period was warranted based on incorrect information given by a VA claims counselor concerning the filing deadline.

In October 2007, this Court vacated the November 2002 Board decision with respect to both determinations and remanded the matters to the Board for further proceedings. *Boyd v. Mansfield*, No. 03-1508, U.S. Vet. App. LEXIS 1803 (Oct. 22, 2007) (mem. dec.); R. at 51-65. As to the first claim stream, the Court directed the Board to discuss the potential applicability of equitable tolling to the 60-day period for filing a Substantive Appeal. As to the second claim stream, the Court explained that the Board's decision on the Substantive Appeal issue might have a "significant impact" on the matter of an earlier effective date for Mr. Boyd's 30% disability rating and, therefore, concluded that the earlier-effective-date issue "is inextricably intertwined with Mr. Boyd's claim that he filed a timely Substantive Appeal." R. at 59.

3

Of note, approximately two months before the Board issued the June 2008 decision now on appeal, Mr. Boyd notified VA that his address was "Apt A, 209 Halstead, Copperas Cove, Texas, 76522." R. at 885. Approximately two weeks later, on April 18th, however, Mr. Boyd again contacted VA, and VA noted that Mr. Boyd reported his address as "3473 Lions Gate Ct, Lithonia, Georgia 30038." R. at 883.

In the June 2008 decision, the Board found, with respect to the first claim stream, that Mr. Boyd's Substantive Appeal relating to his initial 10% rating and effective date was untimely and that equitable tolling was not warranted. Accordingly, the Board denied "the appeal on that issue." As to the second claim stream, the Board found remand was warranted regarding an effective date earlier than May 1999 for the 30% rating.

The Board's cover letter enclosing the June 2008 decision was addressed to "1535 MLK Dr., Copperas Cove, TX 76522," the address on file for Mr. Boyd prior to April 2008. R. at 30. The June 2008 Board decision was returned to the Board as undeliverable. On July 8, 2008, the Board instructed the Waco, Texas, RO to ascertain Mr. Boyd's correct address and resend the Board decision to him. R. at 85. On August 13, 2008, the RO sent a copy of the June 2008 Board decision to Mr. Boyd at "*Apt 1*, 209 E Halstead, Copperas Cove, TX 76522." R. at 84 (emphasis added). Apparently this letter was not returned as undeliverable notwithstanding the facts that Mr. Boyd's previous address was at "*Apt. A*, 209 E. Halstead," and, most significantly, that Mr. Boyd's address at the time was in Lithonia, Georgia. Notably, VA previously used "Apt. A," not "Apt. 1," in sending notice to Mr. Boyd and in recording his address. R. at 1449 (Jan. 2008 90-Day Letter), 885 (Apr. 3, 2008 Report of Contact), 83 (VA database screenshot). There is no indication in the record that the RO or the Board ever sent the June 2008 Board decision to the Lithonia, Georgia, address.

Subsequently, on February 27, 2009, the RO received a statement from Mr. Boyd in which he disagreed with the Board's June 11, 2008, decision, and he addressed both claim streams. As to the first claim stream, he asserted error in the Board's determination that there was no proof that he had received inaccurate information from VA regarding the filing deadline for his February 2000 Substantive Appeal and referred to his signature on a VA sign-in sheet with both security staff and

VA on the day he spoke with a VA claims counselor. R. at 71-72.[1] As to the second claim stream, he stated that he believed he was entitled to an effective date earlier than May 26, 1999, for his 30% rating. R. at 72.

Acting on the June 2008 Board remand of the matter of an effective date earlier than May 1999 for the 30% rating–the second claim stream, the Appeals Management Center (AMC) issued an April 2009 Supplemental Statement of the Case (SSOC) continuing the denial of an earlier effective date. R. at 68. The Secretary took no action on Mr. Boyd's February 2009 statement with respect to the first claim stream; specifically, the Secretary did not address whether the February 2009 statement was a motion for reconsideration of the June 2008 Board finding untimely Mr. Boyd's Substantive Appeal as to the effective date of service connection and the 10% rating.

In August 2009, the Board issued a decision addressing both claim streams. As to the first claim stream, the Board concluded that the June 2008 Board decision was final on the issue of the timeliness of the Substantive Appeal. The Board did not address the veteran's February 2009 statement asserting error in the June 2008 Board decision. With respect to the second claim stream, the Board denied an effective date earlier than May 1999 for Mr. Boyd's 30% rating. R. at 3-15.

In February 2010, Mr. Boyd filed pro se a Notice of Appeal (NOA) in this Court, stating that he "disagree[d] with the Board of Veterans['] Appeals." That NOA was dismissed by the Court, however, pursuant to *Henderson v. Peake*, 22 Vet.App. 217, 221 (2008), because it was filed more than 120 days after the August 2009 Board decision. *See* May 21, 2010, Order. Mandate issued in August 2010.

---

[1] Although Mr. Boyd referred to VA's "letter dated July 11, 2008," it is clear from the language in his statement that he is quoting from the June 2008 Board decision. He specifically quotes language from page 11, paragraph 3, of the Board decision.

Subsequently, in February 2012, Mr. Boyd filed pro se a motion to recall mandate.[2]  Mr. Boyd argued the merits of the Substantive Appeal issue decided in the June 2008 Board decision, as well as the merits of the earlier-effective-date issue decided in the August 2009 Board decision. Feb. 29, 2012, Motion to Recall Mandate at 1.  Accordingly, his motion to recall mandate sought to reinstate an appeal from both the June 2008 and August 2009 Board decisions.

Responding to the motion, the Secretary informed the Court that Mr. Boyd had filed a timely motion for Board reconsideration of the August 2009 Board decision and that, although the Board Chairman denied that motion in a September 29, 2010, decision, the Chairman's decision was mailed to Mr. Boyd at an outdated address.[3]  The Secretary therefore was "not opposed to the Court's recall of mandate and acceptance of the NOA."  Apr. 16, 2012, Secretary's Response.  The Secretary did not address Mr. Boyd's contentions regarding the June 2008 Board decision.  In May 2012, the Court granted the motion to recall mandate and withdrew its entry of judgment and 2010 dismissal order.

Following the reinstatement of Mr. Boyd's appeal, the parties completed briefing in March 2013.  In September 2013, the Court directed that the Secretary file a supplement to the record on appeal to include the Board's cover letter to the June 2008 Board decision and notice of appellate rights.  The case was then submitted to a panel, Mr. Boyd retained counsel, the parties filed substitute briefs, and this Court heard oral argument.

## II.  PARTIES' ARGUMENTS

On appeal, the appellant challenges both the June 2008 and August 2009 Board decisions. He makes two main arguments:  First, he maintains that the June 2008 Board decision did not become final until the issue regarding an earlier effective date for his increased rating was decided

---

[2]  Mr. Boyd filed his motion to recall mandate within 120 days of this Court's Miscellaneous Order No. 04-12, which allowed any appellant whose appeal was dismissed pursuant to this Court's decision in *Henderson v. Peake*, *supra*, to file a motion to recall mandate premised on an argument that the 120-day period for filing the NOA should be equitably tolled in his or her case.  Misc. Order No. 04-12 (U.S. Vet. App. Feb. 7, 2012).  The miscellaneous order was issued based on the U.S. Supreme Court's decision in *Henderson v. Shinseki*, 131 S. Ct. 1197 (2011), *rev'g* 589 F.3d 1201 (Fed. Cir. 2009), which held that the 120-day limit to file an NOA–although an important procedural rule–was not jurisdictional, and subsequently, in *Bove v. Shinseki*, 25 Vet.App. 136 (2011), this Court held that "the important procedural rule" is subject to equitable tolling.

[3]  Because the Board Chairman's decision denying reconsideration was attached to the response, Mr. Boyd was notified of the Board Chairman's denial as of the date the response was served.

6

in the August 2009 Board decision because this Court's October 2007 decision had deemed the matters inextricably intertwined and the Board, therefore, had no authority to separately adjudicate the issues. Alternatively, he asserts that, following the Court's 2007 remand decision, he was entitled to specific notice of the Board's intent to separate the issues prior to the Board's decision. Second, he argues that the finality of the June 2008 Board decision was abated because the Board mailed that decision to him at the wrong address and, therefore, the 120-day period to appeal to this Court did not begin to run until he received notice of the 2008 decision. Regarding the August 2009 Board decision, the appellant essentially challenges the May 1999 assigned effective date for his increased rating, arguing that the Board failed to address medical reports from 1982 through 1996 "showing whole body involvement" of loss of pigmentation.

The Secretary contends that the Court lacks jurisdiction to review the June 2008 Board decision because it was a final, appealable decision, and the appellant's 2010 pro se NOA was untimely as to this Board decision. The Secretary concedes that the June 2008 decision was mailed to the appellant at the wrong address but asserts that the appellant "did in fact receive and had actual notice of the June 2008 decision" when it was remailed to him in July 2008. In support, the Secretary argues (1) the remailing was not returned as undeliverable; (2) the appellant later referenced the Board decision in the February 2009 statement to the RO; and (3) the appellant merely contends that the Board decision was mailed to the wrong address but does not assert that he did not actually receive it after the remailing.

The Secretary further argues that the Board is not required to provide any specific notice of its intent to separate issues previously found by the Court to be inextricably intertwined and maintains that it was within the Board's authority to separately decide the claims or issues because (1) the Court did not conclude that a decision on the Substantive Appeal issue depended on the disposition of the earlier-effective-date issue, only vice versa–i.e., that the earlier-effective-date issue depended on the Substantive Appeal issue–and, therefore, the issues did not have an interdependent (mutually dependent) relationship; and (2) a Court determination that two issues are inextricably intertwined that is made for purposes of judicial economy is not binding on the Secretary. Finally, the Secretary asserts that the effective date for the appellant's increased-rating claim, which he filed in February 2000, can be no earlier than one year prior to the date of the claim.

7

## III. ANALYSIS

### A. Jurisdiction: Scope of NOA

The Court does not have jurisdiction to review a Board decision unless an NOA as to that Board decision has been filed with the Court. This Court has the authority to determine whether a timely NOA has been filed. *See Fithian v. Shinseki*, 24 Vet.App. 146, 157 (2010); *see also Hayre v. Principi*, 15 Vet.App. 48, 57 (2001) (Kramer, C.J., concurring in part and dissenting in part as to dismissal) (stating that "this Court has the responsibility to determine for itself whether it has jurisdiction to consider a claim"). "These determinations are not dicta, but are essential to the decision of the Court as it exercises its appellate review authority." *Fithian*, 24 Vet.App. at 157. As the Court has previously made clear, the Court "has an independent duty to determine its own jurisdiction, even if the matter is not raised by the parties." *Posey v. Shinseki*, 23 Vet.App. 406 , 407 (2010) (citing *Clemons v. Shinseki*, 23 Vet.App. 1, 3 (2009)).

Accordingly, before the Court can turn to the question of the timeliness of the NOA, the Court must first determine whether the pro se NOA received by the Court on February 22, 2010, is an appeal not only of the August 2009 Board decision,[4] but also of the June 2008 Board decision.

It is well settled that the adequacy of an NOA must be determined with two interpretive principles in mind: (1) NOAs are to be liberally construed, and (2) pro se pleadings are to be liberally construed. *Durr v. Nicholson*, 400 F.3d 1375, 1380 (Fed. Cir. 2005). The Federal Circuit interpreted Rule 3(c)(2) of this Court's Rules of Practice and Procedure (Rules) to require that "the issue of whether a Board decision has been identified should be determined by referencing the surrounding circumstances." *Id.* The Federal Circuit also determined that the language of Rule 3(c)(2) was expressly adopted to incorporate the holding in *Calma v. Brown*, 9 Vet.App. 11 (1996), that an NOA "'need not contain a literal statement that a [Board] decision is being appealed to the Court, as long as the intent to seek Court review is clear from the document as a whole and the circumstances of its filing with the Court.'" *Durr*, 400 F.3d at 1381 (quoting *Calma*, 9 Vet.App. at 15, and *In Re Rules of Practice & Proc.*, 2002 U.S. Vet. App. Claims LEXIS 704, Misc. No. 1-02 (Vet. App. Sept. 17, 2002)). The Federal Circuit thus concluded that "a Board decision need only

---

[4] The parties do not dispute that the NOA seeks to appeal the August 2009 Board decision.

be reasonably identified in light of the surrounding circumstances." *Id.* Quoting *Intercargo Insurance Co. v. United States*, 83 F.3d 391, 395 (Fed. Cir. 1996), the Federal Circuit also noted that it is "'not the case . . . that any . . . notice that does not strictly conform to the "form and manner" prescribed in the regulation is ineffective. . . . [N]ot all deviations from the requirements of the statute or regulation would affect the interests that the statute and regulation are designed to protect.'" *Durr*, 400 F.3d at 1382.

Here, in his pro se NOA, the appellant stated, in toto: "I disagree with the Board of Veterans['] Appeals and I am appealing to the Court of Appeal[s] to overturn the Boards' decision." Although the NOA did not identify any Board decision by date, a liberal construction of the NOA reflects the appellant's intent to appeal both the June 2008 and August 2009 decisions. That one of the Board decisions the appellant was appealing was the June 2008 Board decision crystalized when he filed his pro se motion to recall mandate in February 2012, and later his informal brief, including arguments regarding the merits of the Substantive Appeal issue decided in the June 2008 Board decision.[5]

Accordingly, the Court holds, through a liberal construction of the appellant's pro se NOA–which itself is broadly worded–and the circumstances surrounding the filing of the NOA–which include the statements made in the appellant's motion to recall mandate– that the appellant appealed both the Board's June 2008 and August 2009 decisions. *See Durr*, 400 F.3d at 1381. Consequently, the Court has jurisdiction both to determine whether the 2008 Board decision is a final decision for purposes of Court review and to review the 2009 Board decision.

### B. Timeliness of NOA

Although the filing of an NOA is a jurisdictional requirement, the *timely* filing of an NOA is no longer a jurisdictional issue. The 120-day judicial appeal period nonetheless remains an important procedural rule and is subject to the Court's assessment of equitable tolling when equitable tolling is raised by an appellant. *See Bove*, 25 Vet.App. at 140. Generally, in equitable tolling cases, circumstances such as mental illness or filing the notice of appeal with the wrong tribunal prevent

---

[5]Although the appellant's informal brief was later substituted by a brief filed by counsel, the issues identified in the informal brief, including those related to the timeliness of his Substantive Appeal, are used to determine the scope of the appellant's NOA and not the merits of the issues on appeal.

a timely filing. *See Barrett v. Principi*, 363 F.3d 1316, 1317 (Fed. Cir.2004); *Rickett v. Shinseki*, 26 Vet.App. 210 (2011) (en banc); *see also Checo v. Shinseki*, 748 F.3d 1373, 1376 n.1 (Fed. Cir. 2014) ("'As a general matter, equitable tolling pauses the running of, or "tolls," a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action.'" (quoting *Lozano v. Montoya Alvarez*, __ U.S. __, 134 S. Ct. 1224, 1231-32 (2014))); *Sneed v. Shinseki*, 737 F.3d 719, 726 (Fed. Cir. 2013) ("Equitable tolling is not 'limited to a small and closed set of factual patterns'" but rather is decided on a "'case-by-case basis.'" (quoting *Mapu v. Nicholson*, 397 F.3d 1375, 1380 (Fed. Cir. 2005), and *Holland v. Florida*, 560 U.S. 631, 650 (2010))).

Other circumstances may also affect the start and running of the 120-day judicial appeal period that the Court may consider in determining whether a Board decision became final for purposes of appeal and whether the 120-day period to file an NOA expired before the NOA was filed. For example, relevant here are principles associated with the presumption of regularity that attaches to a Board mailing of a Board decision that starts the clock on the 120-day period. Additionally, once started, the clock may stop and the finality of the Board decision be abated if a claimant files a motion for Board reconsideration, *Rosler v. Derwinski*, 1 Vet.App. 241 (1991), or a document that expresses disagreement with a Board decision, *Ratliff v. Shinseki*, 26 Vet.App. 356 (2013).

For the reasons stated below, as to the 2008 Board decision, the Court concludes that the appellant's NOA, when filed, was premature and remains premature as of this date. As to the 2009 Board decision, the NOA was also premature because when it was filed the Secretary had not notified the appellant that his timely motion for Board reconsideration of the 2009 Board decision had been denied. Subsequently, upon the Board Chairman's denial of the motion for Board reconsideration, the appellant's NOA became effective. *See Wachter v. Brown*, 7 Vet.App. 396, 397 (1995) (per curiam order) (holding that a premature NOA became effective upon the Chairman's denial of a motion for Board reconsideration).

*i. Improper Mailing of the June 2008 Board Decision*

In support of his argument that notice of the June 2008 Board decision was mailed to the wrong address, the appellant asserts that the Board mailed its decision to a Copperas Cove, Texas, address when an April 18, 2008, VA report of contact showed that he had reported his new address to be in Lithonia, Georgia. Reply at 4 (citing R. at 882). The Secretary responds that the appellant "had actual notice . . . no later than July 2008" of the June 2008 decision. Secretary's Surreply at 2. The record supports the appellant's argument, and the Secretary has not demonstrated that the appellant had actual notice prior to February 2009.

Pursuant to 38 U.S.C. §§ 5104(a) and 7104(e), the Board must "promptly mail a copy of its written decision to the [appellant] . . . at the last known address of the appellant." *Clark v. Principi*, 15 Vet.App. 61, 63 (2001). Based on the presumption of regularity, the Court presumes that "'the Secretary properly discharged his official duties by mailing a copy of a [Board] decision to the last known address of the appellant . . . on the date that the decision was issued.'" *Clarke v. Nicholson*, 21 Vet.App. 130, 133 (2007) (quoting *Woods v. Gober*, 14 Vet.App. 214, 220 (2000)). In order for this presumption to attach, VA must provide notice to the latest address of record for the claimant. *Crain v. Principi*, 17 Vet.App. 182, 186 (2003). This presumption is not absolute and may be rebutted with "clear evidence that VA did not follow its regular mailing practices or that its practices were not regular." *Id*.

The mere assertion of nonreceipt by an appellant is not enough to establish the clear evidence needed to overcome the presumption of regularity in the mailing of the Board decision. *Id*.; *Davis v. Principi*, 17 Vet.App. 29, 37 (2003). However, the presumption of regularity may be rebutted where there is (1) evidence that VA used an incorrect address on the Board mailing, or (2) evidence that the mailing was returned as undeliverable and there were other possible and plausible addresses available to VA at the time of the Board decision. *See Clarke*, 21 Vet.App. at 134 (noting that "VA's use of an incorrect address is often consequential to delivery. Thus, we have found the existence of clear evidence to rebut the presumption of regularity when VA addressed communications to a wrong street name, wrong street number, or wrong ZIP code in circumstances indicating that such errors were consequential to delivery.") (collecting cases); *Crain*, 17 Vet.App. at 187 ("VA's use of an incorrect address for a claimant constitutes the 'clear evidence' needed to rebut the presumption

11

of regularity of mailing."); *Davis*, 17 Vet.App. at 37 (holding that to rebut presumption of regularity in mailing, the appellant must establish both that mailing was returned as undeliverable and that there were other possible and plausible addresses available to VA).

Once the presumption is rebutted, the Secretary has the burden to show that the Board decision was mailed in the appropriate manner "or that the appellant actually received a copy of the decision." *Sthele v. Principi*, 19 Vet.App. 11, 19 (2004); *see Fluker v. Brown*, 5 Vet.App. 296, 298 (1993). Accordingly, the 120-day period of 38 U.S.C. § 7266(a) does not begin to run until the defect in mailing is cured by a proper mailing or proof of actual receipt. *Id.*; *see Clark*, 15 Vet.App. at 67 (holding that the date of actual receipt was the date on which the 120-day period of 38 U.S.C. § 7266(a) began to run); *Tablazon v. Brown*, 8 Vet.App. 359, 361 (1995) (holding that, "where VA has failed to procedurally comply with statutorily mandated requirements, a claim does not become final for purposes of appeal to the Court" and thus, "there is no final Board decision before us for review"). The Court reviews de novo whether clear evidence exists to rebut the presumption of regularity. *Clarke*, 21 Vet.App. at 133.

Here, evidence sufficient to rebut the presumption is present. It is undisputed that the Board initially mailed its June 2008 decision to the appellant at an old address–1535 MLK Drive, Copperas Cove, Texas–with the mailing returned as undeliverable and that other plausible addresses were available to the Secretary at the time. R. at 30, 85. Although the Secretary asserts that the Board remailed the June 2008 decision on August 13, 2008, the remailing was again to a superceded–and wrong–address again, i.e., "Apt. 1, 209 E. Halstead" instead of "Apt. A, 209 E. Halstead," when his last known address was "3473 Lions Gate Ct., Lithonia, Georgia 30038."

The Secretary has not demonstrated that the June 2008 Board decision was either mailed in the appropriate manner or that the appellant actually received it. As noted above, although the April 18, 2008, VA report of contact establishes that the Georgia address was the appellant's last known address at the time the Board issued its June 2008 decision, the Secretary's original mailing of the June 2008 decision, as well as his August 13, 2008, remailing, was to a Texas address rather than the appellant's address in Georgia.[6]

---

[6] The Secretary asserts that the Court should "assume" that the appellant received the 2008 Board decision on *July 11, 2008*, and that the 120-day appeal period thus ended on November 8, 2008, and the February 2009 letter "was

12

As to actual receipt, the Secretary argues that actual receipt is demonstrated by the fact that (1) the remailing was not returned as undeliverable, (2) the appellant later referenced the Board decision in a February 2009 statement to the RO, and (3) the appellant merely contends that the Board decision was initially mailed to the wrong address but does not allege that he did not actually receive the Board decision after it was remailed.

The first and third facts noted by the Secretary fail to demonstrate actual receipt. As to the first fact, it demonstrates, at best, that the Board decision was received by the occupant of Apartment 1, 209 East Halstead, and not returned, or, if Apartment 1 did not exist, that the decision was delivered to a different apartment, or that it was delivered to the current occupant of Apartment A, despite the incorrect address to Apartment 1. As noted earlier, Mr. Boyd did not live at a Texas address at the time of the mailing. The Court holds that the Secretary is not entitled to a presumption of receipt based on the mailing not having been returned as undeliverable where the mailing was not correctly addressed to the claimant. The Secretary has not met his burden of showing a subsequent proper mailing. As to the third fact, the Secretary fails to appreciate that the presumption of regularity has been rebutted and that it is the Secretary's burden–not the appellant's–to show actual receipt. *See* 38 U.S.C. §§ 5104(a) (requiring Secretary to provide to a claimant timely notice of a decision affecting the provision of benefits); 7104(e)(1) (providing that the Board "shall promptly mail a copy of its written decision to the claimant at the last known address of the claimant"); *Sthele*, *supra*.

The second fact establishes that the appellant had knowledge of the 2008 Board decision, but only as of February 2009 and not necessarily sooner. *See supra* note 1. Where the evidence shows that the Secretary did not properly mail or remail the Board decision to the appellant's last known address, the Court will not assume actual receipt of that decision until there is evidence of actual receipt. Accordingly, the Court holds that the earliest point that the Secretary can demonstrate the appellant had knowledge of the June 2008 Board decision, and therefore, actual receipt of it, is February 27, 2009, when Mr. Boyd submitted his statement to the RO in which he stated his

received more than 200 days after July 11, 2008." Surreply at 5. The Court notes that, at oral argument, upon being questioned, the Secretary acknowledged that the Board decision was not remailed on July 8, 2008, as stated in the Secretary's surreply, and that the letter of remailing to the appellant is actually dated August 13, 2008.

13

disagreement with the June 2008 Board decision. *See Hampton v. Nicholson*, 20 Vet.App. 459, 461-62 (2006) ("The unrebutted Report of Contact demonstrates actual knowledge of the contents of the May 2002 Board decision by the appellant on May 20, 2002, and therefore his timely receipt thereof" and finding that "the appellant had actual receipt of the Board decision as of May 20, 2002, thus curing as of that date any defect in mailing."); *Davis* and *Clark*, both *supra*. Accordingly, the Court further holds that the 120-day judicial-appeal period began to run on February 27, 2009. *See Hampton*, *Davis*, and *Clark*, all *supra*.

*ii. Abatement of Finality of June 2008 Board Decision*
*Due to Potential Motion for Reconsideration*

As noted above, the finality of a Board decision for purposes of appealing to the Court is abated upon a claimant's filing of a motion for Board reconsideration within the 120-day appeal period. *See* 38 C.F.R. § 20.1001(a) (2014) (motions for reconsideration); *Rosler*, 1 Vet.App. at 243-44. This Court has authority to determine whether a document may be a motion for reconsideration. *See Fithian*, 24 Vet.App. at 157; *see also Ratliff*, 26 Vet.App. at 360-61.

In *Ratliff*, this Court acknowledged the Secretary's policy to treat all written expressions of disagreement with a Board decision filed at the RO as potential motions for Board reconsideration and to forward them for the Board to determine whether they are actual motions for reconsideration. 26 Vet.App. at 360-61. The policy requires the ROs and the AMC to "quickly identify possible [motions for reconsideration] and promptly forward them to [the Board]." VA ADJUDICATION PROCEDURES MANUAL (M21-1 MR), pt. I, ch. 5, § G.33.c-d, *quoted* in *Ratliff*, 26 Vet.App. at 358. In *Ratliff*, this Court held

> that when a written expression of disagreement with a Board decision is filed at the RO during the 120-day period to file an NOA, it abates finality of the Board decision for purposes of appealing to the Court until one of the following actions is taken: (1) The Secretary determines the written disagreement is an NOA and returns it to the claimant with information concerning the proper location to lodge an appeal or forwards it to the Court and so notifies the claimant; (2) *the Board Chairman determines the status of the document, that is, whether it is considered a motion for Board reconsideration or not, and notifies the claimant of its determination*; or (3) the claimant files an NOA with the Court and, assuming that the Court becomes aware that prior to the filing of the NOA a written disagreement was filed with the RO within the Court's appeal period, determines that the written disagreement was a misfiled NOA and not a motion for Board reconsideration. *Cf. Posey*[, *supra*] and

14

> *Boone*[ *v. Shinseki*, 22 Vet.App. 412, 414 (2009)]; *cf. Wachter v. Brown*, 7 Vet.App. 396, 397 (1995) (per curiam order) (holding that a premature NOA became effective upon the Chairman's denial of a motion for Board reconsideration).
>
> We further hold that if the Secretary returns the written disagreement to the claimant or the Board determines that the written disagreement does not constitute a motion for Board reconsideration, the Secretary must notify the claimant that the Board decision, as of the date of notification to the claimant, is now deemed final and that the claimant has a new 120-day appeal period beginning with the date of the mailing of the notification.

*Ratliff*, 26 Vet.App. at 360-61 (emphasis added).

Here, in February 2009, the appellant submitted to VA a statement that indicated his disagreement with the 2008 Board decision; specifically, as to the first claim stream, he noted his disagreement with the Board's finding that equitable tolling of the 60-day Substantive Appeal period was not warranted and stated that, contrary to the Board decision, he had proof that he spoke with a VA representative during that period and it consisted of the "sign in" roster with security staff and with VA. R. at 71-72. As to the second claim stream, he stated that he was entitled to an earlier effective date for his 30% rating. *Id.* This statement is a potential motion for Board reconsideration of the June 2008 decision, which abates the finality of the 2008 Board decision for purposes of appeal to this Court, until one of the actions noted in *Ratliff* is taken.

However, none of the three actions noted above in the language quoted from *Ratliff* has yet occurred.[7] Indeed, as noted above, the Secretary took *no action* on the February 2009 statement to the extent that it referenced the June 2008 Board decision. Because the 2009 statement reflects disagreement with the 2008 Board decision and was filed with the RO within the 120-day appeal period, the 2009 statement abated the finality of the June 2008 Board decision for purposes of appealing to this Court, and the abatement continues until the Board Chairman determines whether the February 2009 statement is a motion for Board reconsideration of the June 2008 Board decision. *See Ratliff*, *supra*. Accordingly, the 2008 Board decision remained abated when the appellant filed his NOA, and his NOA was prematurely filed with respect to this decision. *See Wachter*, *supra*.

---

[7] We further note that the written disagreement does not reflect an intent to appeal to the Court and therefore is not an NOA. *See Rickett*, 26 Vet.App. at 219 (noting that a written disagreement filed at the RO may constitute a misfiled NOA if it reflected a clear intent to appeal to the Court).

Moreover, the veteran's February 2009 statement is a potential motion for Board reconsideration of the June 2008 Board decision as to *both* claim streams: His potential Board reconsideration motion specifically mentioned both claim streams. R. at 71 ("[T]he information given to me was inaccurate[,] which was the reason I missed my due date [as to the February 2000 Substantive Appeal]."); 72 ("I believe[] I am entitled to [an] earlier effective date than May 26[,] 1999[,] for the granting of a 30[%] disability evaluation . . . ."). To the extent the February 2009 statement expressed disagreement with the decision on the first claim stream, the matter is still pending at VA awaiting action pursuant to *Ratliff*. To the extent the February 2009 statement expressed disagreement with the June 2008 Board decision on the second claim stream, i.e., remand of the earlier-effective-date issue on the 30% rating, VA acted on the statement by addressing its substance in the April 2009 SSOC that was issued in connection with the second claim stream (R. at 68), in the ensuing August 2009 Board decision as to that issue once further remand action had been taken, and in the Board Chairman's subsequent, September 2010 denial of reconsideration of the 2009 Board decision. *Cf. Williams v. Peake*, 521 F.3d 1348, 1351 (Fed. Cir. 2008) (holding that "a subsequent final adjudication of a claim which is identical to a pending claim that had not been finally adjudicated terminates the pending status of the earlier claim" and this "later disposition, denying the claim on its merits, also decides that the earlier identical claim must fail") (citing *Ingram v. Nicholson*, 21 Vet.App. 232, 243 (2007)); *cf. also Charles v. Shinseki*, 587 F.3d 1318, 1323 (Fed. Cir. 2009) ("[W]hen the substance of a later-filed claim is addressed in an RO decision, the claimant can infer that the earlier-filed claim based on the same disability has also been adjudicated.") (citing *Williams*, 521 F.3d at 1350).

Accordingly, the NOA remains premature as to the June 2008 Board decision on the issues stemming from the first claim stream and the Court may not now consider the merits of those issues. However, the NOA, since its filing, has become effective as to the 2009 Board decision and the issues stemming from the second claim stream. It is effective despite the nonfinal 2008 Board decision because, as discussed in the next section, the matters are separately appealable to this Court.

Following the Board Chairman's determination as to whether the February 2009 statement is a motion for Board reconsideration of the June 2008 Board decision on the first claim stream, the

appellant is entitled to a notice of appellate rights, including notice of a new 120-day judicial appeal period beginning with the date of the notification's mailing. *Ratliff*, *supra*.

## C. Whether the Board May Separately Adjudicate Matters
## Deemed Inextricably Intertwined by the Court

Although the appellant focuses on the Board's June 2008 decision in support of his argument that the Board lacked authority to decide the Substantive Appeal issue separate from the earlier-effective-date matter because in the Court's October 2007 remand decision both matters were deemed inextricably intertwined, the June 2008 Board decision, as discussed above, is not on appeal. Nevertheless, the argument applies equally to the Board's August 2009 decision.

In its October 2007 remand decision, the Court directed the Board to discuss the potential applicability of equitable tolling to the 60-day period for filing a Substantive Appeal following the March 1999 SOC. The Court further stated that the matter of entitlement to an effective date earlier than May 26, 1999, for the 30% rating for hypopigmentation "is inextricably intertwined with the appellant's claim that he filed a timely Substantive Appeal." R. at 59. The Court explained that,

> because it is possible that the Board's decision on the Substantive Appeal issue could have a "significant impact" on the claim for an earlier effective date for the 30% disability rating for hypopigmentation, the Court will vacate the Board's decision in regard to the earlier effective date for hypopigmentation and remand the claim for readjudication.

*Id*. Overall, the Court's 2007 memorandum decision addressed (1) the first claim stream by remanding it for the Board to determine whether tolling applied to the Substantive Appeal period and (2) the second claim stream by declining to make a decision at that time on the effective-date issue for the 30% rating assigned for hypopigmentation.

As noted above, on remand the Board in its June 11, 2008, decision addressed (1) the first claim stream by finding that the appellant's Substantive Appeal relating to his initial disability rating and the effective date of service connection was untimely and that equitable tolling was not warranted, and (2) the second claim stream by remanding the matter of an effective date earlier than May 1999 for the increased (30%) rating based on the February 2000 claim for increased rating. The second claim stream returned to the Board in August 2009, and the Board found that an effective date earlier than May 1999 for the 30% rating was not warranted. R. at 3-15.

17

The Court agrees with the Secretary that the Court's 2007 determination that the issues were inextricably intertwined was relevant only to the extent that it provided support for its decision to remand the issue of an earlier effective date for the 30% rating for purposes of judicial economy and prudence. *See Tyrues v. Shinseki*, 23 Vet.App. 166, 178-79 (2009) (en banc) (holding that "[i]f we find that the matter on appeal is inextricably intertwined with an issue or claim still pending before VA, the Court generally will decline, for reasons of judicial economy or on prudential grounds, to review the merits of the claim or issue adjudicated in the Board decision"), *aff'd*, 631 F.3d 1380, 1383 (Fed. Cir. 2011), *vacated and remanded for reconsideration*, 132 S. Ct. 75 (2011), *reinstated as modified*, 26 Vet.App. 31 (2012) (per curiam order), *aff'd*, 732 F.3d 1351 (Fed. Cir. 2013). The Court's 2007 decision held that judicial review of the Board decision on the effective date of the 30% rating was not warranted because it was inextricably intertwined with the Substantive Appeal issue being remanded in the same Court decision. Although remand on this basis was deemed appropriate on the facts extant before and at the time of the Court's decision, the Court did not require the Board to adjudicate the matters together. *See Harris v. Derwinski*, 1 Vet.App. 180, 183 (1991) ("This Court will neither review [Board] decisions in a piecemeal fashion nor unnecessarily interfere with the Department of Veterans Affairs' (VA) deliberative process."), *overruled on other grounds by Tyrues*, 23 Vet.App. 166.

Accordingly, the Court holds that the Board had the authority to issue separate decisions on the issues of (1) whether the Substantive Appeal was timely as to the appeal stemming from the 1990 claim that involved the initial rating and effective date of service connection for hypopigmentation and (2) whether the veteran was entitled to an effective date earlier than May 26, 1999, for the 30% rating stemming from the 2000 claim for an increased rating. Moreover, each separate decision denying these matters is separately appealable to this Court as a final decision.

The Court's holding is consistent with *Tyrues*, *supra*. This is so because, as stated above, the Court's October 2007 decision noting that the matters were inextricably intertwined for purposes of judicial economy did not mandate to the Board on remand that the matters be decided together at the agency level, and the Board's June 2008 decision, which was a mixed decision, clearly denied the appeal as to the issue of the timeliness of the Substantive Appeal and provided adequate notice of appellate rights on that issue. *See Tyrues*, 23 Vet.App. at 168 (holding that Board decision was a

18

final decision as to its denial of disability compensation for a lung condition under direct-service-connection provision, 38 U.S.C. § 1110, even though the Board had remanded the matter for additional development of evidence on whether the appellant was entitled to a presumptive service connection based on Persian Gulf Syndrome), 180 (holding that the Board's notice that was attached to the 1998 Board decision "informed the appellant that the appellate right pertained to the Board's denial of service connection for a lung disorder on a direct basis, as the matter was not remanded" and "[t]he appellant was thus on notice that VA considered the September 1998 decision of the Board to be a final decision on direct service connection for a lung disability"); *Tyrues*, 732 F.3d at 1356 (affirming this Court and stating that "the denial portion of a mixed decision is a final decision available for Veterans Court review where the Board makes clear the finality of that denial").

In addition, the Board had the authority to issue the separate decisions without providing the appellant with *advance* notice that it would do so. We further hold that the August 2009 Board decision is properly on appeal even though the issues of an initial rating in excess of 10% and an earlier effective date for service connection, which the Court previously deemed inextricably intertwined with the issues now on appeal, are not yet final because finality of the 2008 Board decision on those issues has been abated and currently remains so.

D. Appeal from August 2009 Board Decision

The appellant challenges the May 26, 1999, effective date assigned to his increased (30%) rating. With respect to the increased-rating claim stream, however, the appellant provides no basis for an earlier effective date. He argues only that the Board failed to address medical reports dated from 1982 through 1996 "showing whole body involvement" of loss of pigmentation. Appellant's Brief at 27-28.

Generally, for an original claim or a claim reopened after final adjudication, the effective date can be no earlier than the date of the claim. *See* 38 U.S.C. § 5110(a). The effective date for an increased evaluation is generally the "date of receipt of the claim [for increase] or the date entitlement arose, whichever is later." 38 C.F.R. § 3.400(o)(1) (2014); *see* 38 U.S.C. § 5110(a). An effective date may be assigned during the one-year period prior to the date of the claim for an increased rating if, during that period, it became "factually ascertainable that an increase in disability

19

had occurred," pursuant to section 5110(b)(2) and § 3.400(o)(2). *See Dalton v. Nicholson*, 21 Vet.App. 23, 34-35 (2007). Because the appellant filed his increased-rating claim in February 2000, the earliest effective date he may receive as to this claim would be February 1999; but the appellant points to no evidence during the one-year look-back period that would support a date earlier than May 26, 1999. Accordingly, the appellant fails to demonstrate that the Board erred in its decision. *See Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc) (holding that the appellant has the burden of demonstrating error), *aff'd per curiam*, 232 F.3d 908 (Fed. Cir. 2000) (table). Therefore, the Court will affirm the August 2009 Board decision with respect to its determination as to the increased-rating claim that was the subject of the second claim stream.

The Court makes clear that its affirmance of the August 2009 Board decision does not preclude the appellant's potential right to a disability rating higher than his initial 10% rating before May 26, 1999, and entitlement to an effective date earlier than March 26, 1990, based on his March 1990 claim to reopen, as well as the timeliness of the Substantive Appeal. The veteran retains the ability to continue to seek relief on these matters that are at issue in the first claim stream. Because the first claim stream culminated in the June 2008 Board decision that found the veteran's February 2000 Substantive Appeal untimely as to those issues, and because that decision is currently the subject of a possible request for Board reconsideration, those issues remain untouched by the affirmance of the 2009 Board decision.

Further, the Court will modify the August 2009 Board decision to remove findings that might preclude the veteran from obtaining relief on the matters at issue in the first claim stream. *See* 38 U.S.C. § 7252(a) (providing the Court with "the power to affirm, modify, or reverse a decision of the Board, or to remand the matter"); R. at 6 (August 2009 Board concludes that whether the February 2000 Substantive Appeal was timely "has been decided" and "is now final"); R. at 15 (despite recognizing that there is only a one-year look-back period as to his February 2000 claim for an increased rating, the August 2009 Board reviews medical evidence from as far back as the 1980s and broadly concludes that "it was not factually ascertainable prior to May 26, 1999, that the service member was entitled to an evaluation of 30[%] for his service connected skin disability"). Because we consider and affirm the 2009 Board decision on the second claim stream, that matter is concluded and the only matters pending before the Board pertain to the first claim stream. *See Means v. Brown*,

20

9 Vet.App. 482, 483 (1996) (per curiam) (noting that "under the 'law of the case' doctrine, an earlier determination by an appellate court is binding upon any administrative tribunal subject to the decision of that court").

Accordingly, the Court will dismiss the appeal from the June 2008 Board decision, which found not timely a February 2000 Substantive Appeal challenging the award of a 10% rating and the effective date of March 26, 1990, for service connection for hypopigmentation, as premature because a potential motion for Board reconsideration as to those issues was filed within 120 days of the 2008 Board decision and remains pending. Although the appeal will be dismissed, the Court expects the Board's compliance with *Ratliff*, *supra*, and, if the Board construes the submission as a motion for reconsideration and denies it, VA is required to provide a new 120-day judicial appeal notice as part of the *Ratliff* notification.

## IV. CONCLUSION

Upon consideration of the foregoing, the appeal from the June 2008 Board decision is DISMISSED without prejudice. In addition, the August 2009 Board decision denying an effective date earlier than May 26, 1999, for the grant of a 30% disability rating for postinflammatory hypopigmentation of the face, back, chest, and abdomen based on a February 2000 increased-rating claim is MODIFIED to remove Board's findings that might preclude the veteran from obtaining relief on the matters at issue in June 2008 Board decision–e.g., Board comments on the finality of the June 2008 Board decision and Board findings relating to entitlement to an effective date earlier than May 26, 1999, that were made on a basis other than the February 2000 increased-rating claim–and, as modified, is AFFIRMED. As stated above, the Court's affirmance of the August 2009 Board decision does not affect the appellant's potential right to a disability rating higher than 10% for the period prior to May 26, 1999, and an earlier effective date of service connection, based on his March 1990 claim to reopen, which are issues that remain pending with VA until the Board Chairman takes action on the appellant's February 2009 potential motion for Board reconsideration of the June 2008 Board decision.

21