Citation Nr: 1801839 
Decision Date: 01/10/18 Archive Date: 01/23/18

DOCKET NO. 12-26 784 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Atlanta, Georgia


THE ISSUES

1. Entitlement to service connection for left knee disability.

2. Entitlement to an initial disability evaluation in excess of 10 percent for degenerative joint disease of the left ankle.

3. Entitlement to a total disability rating for individual unemployability due to service-connected disabilities (TDIU).


REPRESENTATION

Appellant represented by: Georgia Department of Veterans Services


WITNESSES AT HEARING ON APPEAL

The Veteran and his mother

ATTORNEY FOR THE BOARD

C. Samuelson, Counsel


INTRODUCTION

The Veteran served on active duty from February 1987 to August 1987 and February 1988 to November 1989 and his decorations include the Parachute Badge.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a rating decision issued in April 2010 by the Department of Veterans Affairs (VA) Regional Office (RO).

In May 2013, the Veteran and his mother testified at a hearing held via video-conference before the undersigned Veterans Law Judge.

These issues were previously before the Board in January 2015 and remanded for additional development.

The issues of entitlement to an initial disability evaluation in excess of 10 percent for degenerative joint disease of the left ankle and entitlement to TDIU are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDING OF FACT

Degenerative joint disease of the left knee had its onset in service.





CONCLUSION OF LAW

Degenerative joint disease of the left knee was incurred in service. 38 U.S.C. §§ 1131, 1154(a), 5107(b) (2012); 38 C.F.R. §§ 3.102, 3.303 (2017).


REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran contends that his current left knee condition was caused by falling on his knee several times as a parachutist in service. He also contends that his left knee condition is secondary to his service-connected degenerative joint disease of the left ankle. See August 2012 VA Form 9, May 2013 Board hearing transcript, pp. 6, 25; October 2016 statement. He asserts that the lack of treatment for his knee condition after leaving the military was not because he was not bothered by this condition. Rather, he contends that he suffered for several years without treatment because he did not have medical insurance, could not afford treatment, and was unaware of VA medical services. See August 2012 VA Form 9; Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015).

Service connection may be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred or aggravated in active military service. This means that the facts establish that a particular injury or disease resulting in disability was incurred coincident with service in the Armed Forces, or if preexisting such service, was aggravated therein. 38 U.S.C.A. § 1131; 38 C.F.R. § 3.303(a). 

Establishing service connection generally requires medical or, in certain circumstances, lay evidence of (1) a current disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the present disability. See Davidson v. Shinseki, 581 F.3d 1313 (Fed.Cir.2009); Hickson v. West, 12 Vet. App. 247, 253 (1999); Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd per curiam, 78 F. 3d 604 (Fed. Cir. 1996) (table). 

The Board notes that service connection may be granted for disability that is proximately due to or the result of service-connected disability. 38 C.F.R. § 3.310(a). Additional disability resulting from the aggravation of a nonservice-connected disability by a service-connected disability is also compensable under 38 C.F.R. § 3.310(a). Allen v. Brown, 7 Vet. App. 439, 448 (1995) (en banc). 

On the Veteran's October 1989 Report of Medical History, he indicated that he had "trick" or locked knee.

The March 2010 and July 2015 VA examiners diagnosed degenerative joint disease of the left knee. VA treatment records show complaints of knee pain in September 2002 and July 2013 and a diagnosis of knee sprain after a fall in March 2012.

The Board acknowledged that the March 2010 and July 2015 VA examiners provided negative nexus opinions in regard to direct service connection. The July 2015 VA examiner also determined the Veteran's left knee condition is less likely than not proximately due to or the result of the Veteran's service-connected left ankle condition. Neither examiner provided an opinion on whether the left knee condition was aggravated by a service-connected condition.

The Board, however, finds the Veteran's report regarding the onset of his symptoms to be competent and credible. See Layno v. Brown, 6 Vet. App. 465, 470 (1994); Buchanan v. Nicholson, 451 F.3d 1331, 1337 (Fed. Cir. 2006). Resolving all reasonable doubt in the Veteran's favor, the Board finds that service connection for degenerative joint disease of the left knee is warranted. 38 C.F.R. § 3.303(a).


ORDER

Service connection for degenerative joint disease of the left knee is granted.




REMAND

In January 2015, the Board remanded the issue of entitlement to an initial disability evaluation in excess of 10 percent for degenerative joint disease of the left ankle for further development. A VA examination of the left ankle was conducted in July 2015. Since then, the U.S. Court of Appeals for Veteran's Claims (the Court) has issued the decisions in Correia v. McDonald, 28 Vet. App. 158, 166 (2016) and Sharp v. Shulkin, 29 Vet. App. 26 (2017) concerning the adequacy of VA orthopaedic examinations. The Court in Correia held that the final sentence of 38 C.F.R. § 4.59 requires that VA examinations include joint testing for pain on both active and passive motion, in weight-bearing and non weight-bearing and, if possible, with range of motion measurements of the opposite undamaged joint. In Sharp, the Court held that before a VA examiner opines that he or she cannot offer an opinion as to additional functional loss during flare-ups without resorting to speculation based on the fact that the examination was not performed during a flare, the examiner must "elicit relevant information as to the veteran's flares or ask him to describe the additional functional loss, if any, he suffered during flares and then estimate the veteran's functional loss due to flares based on all the evidence of record, including the veteran's lay information, or explain why she could not do so." In light of these decisions, the Board finds that a new VA examination should be provided addressing the Veteran's degenerative joint disease of the left ankle. See Barr v. Nicholson, 21 Vet. App. 303, 312 (2007).

The Veteran's claim for TDIU is inextricably intertwined with the pending claim for an initial disability evaluation in excess of 10 percent for degenerative joint disease of the left ankle. Thus, a decision by the Board on the Veteran's TDIU claim would, at this point, be premature. See Tyrues v. Shinseki, 23 Vet. App. 166, 177 (2009) (en banc) (explaining that claims are inextricably intertwined where the adjudication of one claim could have a significant impact on the adjudication of another claim.).

Accordingly, the case is REMANDED for the following action:

1. Contact the Veteran and request that he identify any and all outstanding VA and private treatment records related to his left ankle and TDIU claims. After obtaining the necessary authorization forms from the Veteran, obtain any pertinent records and associate them with claims file. 

2. Notify the Veteran that he may submit lay statements from himself and from other individuals who have first-hand knowledge, and/or were contemporaneously informed of his the nature, extent and severity of his degenerative joint disease of the left ankle and the impact of that condition, as well as his other service-connected disabilities, on his ability to work. The Veteran should be provided an appropriate amount of time to submit this lay evidence. 

3. Schedule the Veteran for an appropriate VA examination to determine the current nature and severity of his degenerative joint disease of the left ankle. The claims file should be made available to and reviewed by the examiner and all necessary tests should be performed. All findings should be reported in detail.

The examiner should identify all left ankle pathology found to be present. The examiner should conduct all indicated tests and studies, to include range of motion studies. The joint involved should be tested in both active and passive motion, in weight-bearing and non weight-bearing and, if possible, with range of motion measurements of the opposite undamaged joint (in the case of the right ankle). If the examiner is unable to conduct the required testing or concludes that the required testing is not necessary in this case, he or she should clearly explain why that is so.

The examiner should describe any pain, weakened movement, excess fatigability, instability of station and incoordination present. 

The examiner should also state whether the examination is taking place during a period of flare-up. If not, the examiner should ask the Veteran to describe the flare-ups he experiences, including: frequency, duration, characteristics, precipitating and alleviating factors, severity and/or extent of functional impairment he experiences during a flare-up of symptoms and/or after repeated use over time. 

Based on the Veteran's lay statements and the other evidence of record, the examiner should provide an opinion estimating any additional degrees of limited motion caused by functional loss during a flare-up or after repeated use over time. If the examiner cannot estimate the degrees of additional range of motion loss during flare-ups or after repetitive use without resorting to speculation, the examiner should state whether the need to speculate is caused by a deficiency in the state of general medical knowledge (i.e. no one could respond given medical science and the known facts) or by a deficiency in the record or the examiner (i.e. additional facts are required, or the examiner does not have the needed knowledge or training).

4. Then, readjudicate the appeal. If any benefit sought remains denied, provide the Veteran and his representative with a supplemental statement of the case and allow for an appropriate period for response. The appeal should then be returned to the Board for further appellate review, if in order.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C. §§ 5109B, 7112 (2012).





______________________________________________
STEVEN D. REISS
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs